No. 96-584

IN THE SUPREME COURT OF THE STATE OF MONTANA

1997


STATE OF MONTANA,

Plaintiff and Respondent,

v.

THOMAS SULLIVAN,

Defendant and Appellant.


APPEAL FROM:   District Court of the Eighth Judicial District,
In and for the County of Cascade,
The Honorable Jeffrey Sherlock, Judge presiding.


COUNSEL OF RECORD:

For Appellant:

David F. Ness, Attorney at Law, Missoula, Montana

For Respondent:

Hon. Joseph P. Mazurek, Attorney General, Michael S.
Wellenstein, Ass't Attorney General, Helena, Montana

Julie Macek, Chief Deputy Cascade County Attorney,
Great Falls, Montana



Submitted on Briefs: June 12, 1997

Decided:   October 29, 1997
Filed:


_____
Clerk

Justice Karla M. Gray delivered the Opinion of the Court.

Thomas Sullivan (Sullivan) appeals from an order of the Eighth Judicial District Court, Cascade County, dismissing his petition for postconviction relief for failure to state a claim upon which relief could be granted.  We affirm.

Sullivan raises the following issues on appeal:

1.    Did the District Court err in concluding that Sullivan's rights under Brady v. Maryland were not violated?

2.    Did the District Court abuse its discretion in determining that Sullivan is not entitled to a new trial based on newly discovered evidence?

3.    Is Sullivan entitled to a new trial as a matter of due process, pursuant to State v. Perry, based on newly discovered evidence?

BACKGROUND

Sullivan worked for the City of Great Falls (City) Parks and Recreation Department (Department) in various capacities beginning in 1963 and became director of the Department in 1975.  In 1991, the State of Montana (State) charged him with five counts of felony theft:  theft of swimming pool locker money between January of 1988 and August of 1991; theft of golf course driving range money between January of 1988 and August of 1991; theft of golf course storage fees between June of 1989 and July of 1991; theft of golf lesson money between January of 1988 and August of 1991; and theft of golf course membership fees between January of 1990 and August of 1991.  The State also charged Sullivan with one count of tampering with public records or information by accountability (tampering), alleged to have occurred between October of 1987 and January of 1990.  The tampering charge involved Sullivan instructing his secretary to change the total number of golf memberships in the year-end golf report (golf report) to match the amount of membership fees deposited for that year.  Finally, the State charged Sullivan with one count of official misconduct.

Prior to trial, the District Court dismissed the theft charge involving swimming pool locker money.  At trial, Sullivan denied having committed the remaining charges and attempted to establish that financial mismanagement by the City and the Department, rather than theft, accounted for the missing monies.  According to Sullivan, the missing monies were simply misposted or lost.  The jury convicted Sullivan of three counts of felony theft, including theft of golf course membership fees, and tampering.  It acquitted him of the remaining theft charge and official misconduct.  Judgment was entered in June of 1992 and  Sullivan appealed.  We affirmed the convictions, reversed certain aspects of the fine imposed and remanded for clarification.  State v. Sullivan (1994), 266 Mont.

313, 880 P.2d 829.

On December 27, 1993, the new director of the Department discovered an envelope containing $1,300 in cash and checks dated March 4, 1987, in a budget file. The cash and checks were payments for golf course memberships. Neither the City nor the State notified Sullivan or his attorney that the undeposited cash and checks had been discovered. When Sullivan's attorney learned of the discovery in July of 1994, Sullivan filed a petition for postconviction relief asserting that his constitutional rights had been violated and that the newly discovered evidence entitled him to a new trial or an evidentiary hearing. The District Court dismissed the petition and Sullivan appeals.

## STANDARD OF REVIEW

In such recent cases as State v. Sheppard (1995), 270 Mont. 122, 127, 890 P.2d 754, 757 (citing State v. Barrack (1994), 267 Mont. 154, 159, 882 P.2d 1028, 1031), we stated the standard of review of a denial of a petition for postconviction relief as whether "substantial evidence supports the findings and conclusions of the district court." We implicitly clarified that standard, however, in Kills on Top v. State (1996), 279 Mont. 384, 390, 928 P.2d 182, 186, a postconviction relief proceeding where we reviewed findings of fact, conclusions of law and discretionary rulings. There, we stated that we would review a district court's findings of fact in a postconviction relief proceeding--as we review most other findings by trial courts--to determine whether the findings are clearly erroneous. See Kills on Top, 928 P.2d at 186 (citation omitted). We review conclusions of law to determine whether they are correct. Kills on Top, 928 P.2d at 186 (citation omitted). Discretionary rulings in postconviction relief proceedings, including rulings on requests for a new trial, are reviewed for abuse of discretion. See Kills on Top, 928 P.2d at 186 (citations omitted).

1. Did the District Court err in concluding that Sullivan's Brady rights were not violated?

Sullivan argues that the State's failure to disclose the undeposited cash and checks, collected for golf course memberships in 1987 and discovered in 1993, violated his constitutional rights under Brady v. Maryland (1963), 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215. On that basis, he contends that the District Court erred in concluding that no Brady violation occurred.

In Brady, the United States Supreme Court stated that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Brady, 373 U.S. at 87. The Supreme Court recently deleted the Brady requirement of a request from the defendant for exculpatory or

impeachment evidence. Kyles v. Whitley (1995), 514 U.S. 419, 433, 115 S.Ct. 1555, 1565, 131 L.Ed.2d 490, 505. Basically, a Brady due process violation has three elements: 1) The prosecution's failure to disclose 2) exculpatory or impeachment evidence 3) material to either guilt or punishment. Kennedy v. Herring (11th Cir. 1995), 54 F.3d 678, 682 (citing Nelson v. Nagle (11th Cir. 1993), 995 F.2d 1549, 1555).

Generally, Brady applies only to evidence in the prosecution's possession or within its knowledge. United States v. Morris (7th Cir. 1996), 80 F.3d 1151, 1169; United States v. Jones (8th Cir. 1994), 34 F.3d 596, 599.

Here, the cash and checks at issue were not discovered until December 27, 1993, more than one and one-half years after the completion of Sullivan's trial. They were not within the knowledge or possession of the State before or during Sullivan's trial and, as a result, they do not constitute evidence which the State could have produced and which it suppressed or failed to disclose to Sullivan. As a result, we need not address the primary thrust of Sullivan's Brady argument, which is whether the undeposited cash and checks were material to either guilt or punishment under Brady and its progeny. We hold that the District Court correctly concluded that Sullivan's due process Brady rights were not violated.

We observe that, in discussing the Brady issue, Sullivan makes a passing reference to a separate allegation in his postconviction petition, made on information and belief, that other undeposited golf course membership cash and checks were discovered prior to his trial and not disclosed to him by the State. The District Court noted that Sullivan provided no evidence of any type in support of this allegation and did not address it further. Sullivan contends that the District Court erred in dismissing his petition without providing him the opportunity to either conduct discovery on the allegation of a pretrial discovery of undeposited cash and checks or have an evidentiary hearing for further investigation.

Section 46-21-104(1)(c), MCA (1993), requires a postconviction petitioner to attach affidavits, records or other evidence to the petition which support the allegations contained in the petition or state why such evidence is not attached. Here, Sullivan did not attach an affidavit or other evidence substantiating his allegation, on information and belief, of a pretrial discovery of undeposited cash and checks. Nor did he explain in either the District Court or this Court why such evidence was not produced. He

states in his brief on appeal that he obtained the information alleged on information and belief from former employees of the City. Assuming arguendo that his statement is true, Sullivan could have obtained affidavits in support of his allegation of a pretrial discovery of undeposited cash and checks and attached that evidence to his petition as § 46-21-104(1)(c), MCA (1993), requires. He did not do so.

We conclude that Sullivan's unsupported allegation, made on information and belief, did not establish good cause for permission to conduct discovery as required by § 46-21-201(3), MCA (1993). Nor was it sufficient to entitle him to an evidentiary hearing under § 46-21-201(1), MCA (1993). We hold, therefore, that the District Court did not abuse its discretion in these regards.

2. Did the District Court abuse its discretion in determining that Sullivan is not entitled to a new trial based on newly discovered evidence?

Sullivan contends that the undeposited cash and checks discovered after his trial relate to both the theft of golf course membership fees charge and the tampering charge, and also asserts that the undeposited cash and checks provide additional evidence of financial mismanagement by the City and the Department. As a result, he argues that he is entitled to a new trial based on newly discovered evidence under the so-called Greeno factors and that the District Court erred in concluding otherwise.

We recently restated the factors which apply when a district court evaluates a motion for a new trial based on newly discovered evidence. In State v. Cline (1996), 275 Mont. 46, 52, 909 P.2d 1171, 1175 (citing State v. Greeno (1959), 135 Mont. 580, 342 P.2d 1052 (citations omitted)), we stated those factors as:

(1) the evidence must have come to the knowledge of the defendant since trial; (2) it was not through want of diligence that the evidence was not discovered earlier; (3) the evidence is so material that it would probably produce a different result upon another trial; (4) the evidence is not merely cumulative--that is, it does not speak as to facts in relation to which there was evidence at trial; (5) the motion for new trial must be supported by the affidavit of the witness whose evidence is alleged to have been newly discovered, or its absence accounted for; and (6) the evidence must not be such as will only tend to impeach the character or credit of a witness.

All six factors must be met. Cline, 909 P.2d at 1175 (citations omitted). In denying Sullivan's request for a new trial based on newly discovered evidence, the District Court concluded that he did not satisfy the third and fourth Greeno factors. We address each in turn.

To satisfy the third Greeno factor, Sullivan must show that the undeposited cash

and checks probably would have produced a different result at a second trial. See Cline, 909 P.2d at 1175-76. In other words, "the new evidence [must] be so highly probative of the defendant's innocence that its introduction probably would produce an acquittal."

State v. Fina (1995), 273 Mont. 171, 178, 902 P.2d 30, 35 (citation omitted).

Sullivan contends that the charge of tampering with official records in October of 1987 necessarily includes the alleged theft of the undeposited cash and checks dated March 4, 1987. Therefore, according to Sullivan, the undeposited cash and checks are material to both the theft of golf course membership fees charge and the tampering charge. We disagree.

As set forth above, the theft of golf course membership fees charge was alleged to have occurred between January of 1990 and August of 1991. Sullivan was not charged with the theft of golf course membership fees received in 1987. As a result, the later-discovered cash and checks for 1987 were not related to the theft charge at issue and not probative of Sullivan's innocence on that charged offense.

Nor is it probable that the undeposited cash and checks from 1987 would have resulted in an acquittal on the tampering charge, as Sullivan contends. Tampering occurs when a person "knowingly makes a false entry in or false alteration of any record, document, legislative bill or enactment, or thing belonging to or received, issued, or kept by the government for information or record or required by law to be kept by others for information of the government[.]" Section 45-7-208(1)(a), MCA (1989). Furthermore, a person is accountable for an offense when, "having a mental state described by the statute defining the offense, he causes another to perform the conduct, regardless of the legal capacity or mental state of the other person." Section 45-2-302(1), MCA (1989).

Thus, theft is not an element of tampering by accountability, as charged in this case, and evidence of theft--or the absence of theft--of golf course membership fees in 1987 would have been irrelevant to both the State's proof of, and Sullivan's defense to, the tampering charge.

Indeed, the tampering-related evidence at trial, with regard to the document or record requirement of õ 45-7-208(1)(a), MCA (1989), was that Sullivan used the golf report when preparing the budget and that the City Parks and Recreation Board referred to it when deciding whether to increase golf course membership fees and green fees. With regard to the mental state, "false entry" and "causes another" elements of the tampering charge, Sullivan's secretary testified that, when she told Sullivan that the number of golf course memberships purchased during the year did not match the amount of money deposited for golf course memberships during the year, he instructed her to alter the golf report in order to make those numbers match. The undeposited cash and

checks from 1987 would not have been relevant to the tampering charge because that charge was premised on Sullivan having caused another to falsely alter the golf report, not whether the missing monies which resulted in the alteration had been stolen or merely misplaced.

We conclude that the undeposited cash and checks discovered in 1993 would not probably have produced a different result upon retrial of the tampering charge. Accordingly, we hold that the District Court correctly concluded that Sullivan did not satisfy the third Greeno factor.

We reach the same result with regard to the District Court's determination that Sullivan did not satisfy the fourth Greeno factor. To do so, Sullivan must show that the undeposited cash and checks were not merely cumulative evidence. See Cline, 909 P.2d at 1175. In other words, the newly discovered evidence must do more than address facts already in evidence. Cline, 909 P.2d at 1175.

Sullivan is correct in contending that the undeposited cash and checks support his defense theory that the City and the Department routinely mishandled their cash receipts. The question before us, however, is not whether the evidence would support Sullivan's theory, but whether it would be merely cumulative to evidence already of record. Here, substantial evidence at trial showed that the City and the Department employed deficient internal control procedures and financial management practices. For example, a special audit requested by the City revealed that the Department's control procedures for handling cash were insufficient and that, as a result of the poor internal control procedures, the chances that cash could be misappropriated or misposted were increased. Thus, it is clear that the undeposited cash and checks from 1987, which were discovered in 1993, were merely cumulative evidence that the Department did not employ proper internal control procedures. As a result, we conclude that the District Court correctly determined that Sullivan did not satisfy the fourth Greeno factor.

As set forth above, all of the Greeno factors must be met before a party is entitled to a new trial on the basis of newly discovered evidence. We hold that, because Sullivan failed to satisfy the third and fourth factors, the District Court did not abuse its discretion in denying Sullivan a new trial based on newly discovered evidence.

3. Is Sullivan entitled to a new trial as a matter of due process, pursuant to Perry, based on newly discovered evidence?

Sullivan contends on appeal, as he did in the District Court, that he is entitled to a new trial as a matter of due process under State v. Perry (1988), 232 Mont. 455,

758

P.2d 268.  The District Court did not address this issue, but it is clear that Sullivan's reliance on Perry is misplaced.

In Perry, an accomplice recanted his testimony fifteen years after Perry's conviction for second degree murder, and Perry moved for a new trial or other appropriate relief on that basis.  Perry, 758 P.2d at 271-72.  The State argued that Perry's untimely motion for a new trial was actually a petition for postconviction relief which was barred because the five-year statute of limitations had run.  Perry, 758 P.2d at 272.  We noted that the timing of the recanted testimony precluded any possibility that Perry could have filed his pleading within the time allowed for a postconviction relief petition, and expressed our concern that accepting the State's characterization of the pleading as one for postconviction relief could deprive a defendant held in violation of his constitutional rights of a means of redress due solely to procedural bars, contrary to the due process provisions of the Montana Constitution.  Perry, 758 P.2d at 272-73.  On that basis, we determined that Perry's petition "sound[ed] in the nature [of] a petition for habeas corpus" and addressed whether he was entitled to a new trial.  Perry, 758 P.2d at 273.  We ultimately concluded that Perry failed to show he was unjustly incarcerated and affirmed the district court's denial of a new trial.  Perry, 758 P.2d at 276.

Our decision to review the claim in Perry turned on the fact that neither a motion for a new trial nor a petition for postconviction relief was available to Perry at the time the accomplice recanted his earlier testimony.  Based on that fact, we created a "window" for review of a claim of unconstitutional incarceration which otherwise would have been procedurally barred before its alleged basis arose.  We later clarified that Perry is "unique on its facts" and limited its application to other cases with like facts.  State v. Gollehon (1995), 274 Mont. 116, 120, 906 P.2d 697, 700.

Those facts are not present here.  In this case, the newly discovered evidence came to light in time for Sullivan to timely file a petition for postconviction relief.  He duly filed the petition, it is not procedurally barred, and it is presently before this Court.  The procedural device to which we resorted in Perry in order to provide a means of redress otherwise procedurally barred has no application here.  Sullivan's Perry argument, simply put, is a transparent effort to circumvent application of the Greeno factors to his

request
for a new trial based on newly discovered evidence.  We hold that Sullivan is not entitled
to a new trial under Perry.

Affirmed.

/S/   KARLA M. GRAY


We concur:

/S/   J. A.   TURNAGE
/S/   WILLIAM E. HUNT, SR.
/S/   W. WILLIAM LEAPHART
/S/   JIM REGNIER