No. 01-875

IN THE SUPREME COURT OF THE STATE OF MONTANA

2002 MT 187

LUKE SORAICH,

        Petitioner,

    v.

STATE OF MONTANA,

        Respondent.

APPEAL FROM:    District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone,
The Honorable Gregory R. Todd, Judge presiding.

COUNSEL OF RECORD:

        For Petitioner:

            Chad Wright, Appellate Defender, Helena, Montana

        For Respondent:

            Mike McGrath, Montana Attorney General, C. Mark Fowler, Assistant
Montana Attorney General, Helena, Montana; Dennis Paxinos, Yellowstone
County Attorney, Billings, Montana

Submitted on Briefs: June 20, 2002

Decided: August 29, 2002

Filed:

_____
Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1     Luke Soraich appeals the summary dismissal of his petition for postconviction relief by the District Court for the Thirteenth Judicial District, Yellowstone County.  We reverse and remand for an evidentiary hearing.

¶2     We address the following issue on appeal:  Whether the District Court abused its discretion in summarily dismissing Soraich's petition for postconviction relief.

## Factual and Procedural Background

¶3     On January 20, 1996, Dane Jensen was killed by a single gunshot to the head fired at close range.  Soraich was charged with his murder and brought to trial before a jury on February 3, 1997.

¶4     During opening statements, defense counsel, rather than merely holding the State to its burden of proof, promised the jury that he would provide exculpatory evidence that would exonerate Soraich and that would cast the testimony of the only other witness, Leonard Driver, in doubt.  Soraich had stated that he watched Driver kill Jensen and that Driver had sworn him to secrecy.  Defense counsel told the jury that Driver killed Jensen and that Soraich had lied to the police about the events surrounding Jensen's death in an effort to protect Driver.  Defense counsel then told the jury that Driver was the one who gave statements to the police that did not make sense and that Driver had told an investigator for the public defender's office that he was seated in a different location when Jensen was shot.  Defense counsel claimed that this evidence would dismantle Driver's credibility and that,

2

with the evidence he would present at trial, the jury would have reason to doubt Driver's testimony.

¶5 When Driver testified, he admitted giving a statement to the investigator, however, he unequivocally denied that he told the investigator he was sitting on Jensen's couch when the gun was fired. Thereafter, defense counsel informed the court that he intended to call the investigator to impeach Driver's testimony. The prosecutor objected to calling the investigator because the investigator had compiled a report of his conversation with Driver that had never been turned over to the State. Defense counsel refused to turn over the investigator's report directly to the prosecutor, but he did agree to an *in camera* review of the report. Defense counsel wanted an opportunity to review the report himself, in case disclosing the report's contents would change his strategy. The record does not reflect what occurred next, other than defense counsel did not call the investigator to testify.

¶6 During closing arguments, the prosecutor capitalized on defense counsel's failure to call the investigator and to live up to his promise that he would prove that Driver was a liar. The prosecutor specifically referenced various claims defense counsel made in his opening statement and emphasized that defense counsel failed to back up those claims. Defense counsel moved for a mistrial claiming that the prosecutor's closing argument impermissibly shifted the burden of proof to Soraich. The court denied Soraich's motion for a mistrial. Thereafter, the jury convicted Soraich of deliberate homicide and the court sentenced him to 100 years in the Montana State Prison.

¶7 On March 12, 1997, defense counsel filed a motion for a new trial arguing that the

prosecutor's emphasis on Soraich's failure to deliver on the promises made during defense counsel's opening statement violated Soraich's constitutional right to remain silent. The State responded that defense counsel invited the closing remarks when counsel called Driver a liar in his opening statement. The District Court agreed with the State and denied Soraich's motion. The court concluded that each of the prosecutor's closing remarks was justified by defense counsel's attack on Driver's credibility in counsel's opening statement.

¶8　Soraich then appealed to this Court arguing that the prosecutor impermissibly shifted the State's burden of proof during closing argument when the prosecutor told the jury that defense counsel failed to prove the claims he made during opening statements regarding Driver's credibility. We rejected Soraich's burden-shifting argument holding that the prosecutor's closing remarks were not improper comments on Soraich's failure to testify and that the prosecutor was entitled to comment on claims made by defense counsel during opening statements because the defense's theories lacked evidentiary support. *State v. Soraich*, 1999 MT 87, ¶¶ 22-26, 294 Mont. 175, ¶¶ 22-26, 979 P.2d 206, ¶¶ 22-26.

¶9　On July 17, 2000, Soraich filed a petition for postconviction relief in the District Court. In his petition, Soraich claimed that defense counsel rendered ineffective assistance when counsel stated he would prove that Driver gave inconsistent statements without first determining whether he would be able to introduce the investigator's report as impeachment evidence. Soraich argued that defense counsel's opening statements opened the door for the prosecutor to directly attack Soraich's failure to prove his defense and that counsel's failure to produce the investigator's report to support his opening statements bolstered rather than

4

impeached the credibility of the State's key witness, Driver.

¶10   The District Court denied Soraich's petition for postconviction relief on September 27, 2001.  In its Order and Memorandum denying the petition, the court determined that Soraich should have raised his claim of ineffective assistance of counsel when he filed his direct appeal because his claim is based on facts of record in the underlying case.  Thus the court determined that by failing to raise a claim of ineffective assistance of counsel on direct appeal, that claim may not be raised, considered or decided in a proceeding for postconviction relief pursuant to § 46-21-105(2), MCA.

¶11   Soraich now appeals from the District Court's summary dismissal of his petition for post-conviction relief.

## Discussion

¶12   *Whether the District Court abused its discretion in summarily dismissing Soraich's petition for postconviction relief.*

¶13   We review a district court's denial of postconviction relief to determine whether the court's findings of fact are clearly erroneous and whether its conclusions of law are correct. *State v. Turner*, 2000 MT 270, ¶ 47, 302 Mont. 69, ¶ 47, 12 P.3d 934, ¶ 47; *State v. Hanson*, 1999 MT 226, ¶ 9, 296 Mont. 82, ¶ 9, 988 P.2d 299, ¶ 9.  Discretionary rulings in postconviction relief proceedings, including rulings relating to whether to hold an evidentiary hearing, are reviewed for an abuse of discretion. *Hanson*, ¶ 9 (citing *State v. Sullivan* (1997), 285 Mont. 235, 239, 948 P.2d 215, 218).  Moreover, claims of ineffective assistance of counsel are mixed questions of law and fact, therefore, this Court's review is *de novo*.

5

*Turner*, ¶ 47 (citing *Strickland v. Washington* (1984), 466 U.S. 668, 698, 104 S.Ct. 2052, 2070, 80 L.Ed.2d 674; *Iaea v. Sunn* (9th Cir. 1986), 800 F.2d 861, 864; *Langford v. Day* (9th Cir. 1997, 110 F.3d 1380, 1386).

¶14 The right to effective assistance of counsel is guaranteed by the Sixth Amendment to the United States Constitution and Article II, Section 24 of the Montana Constitution. This Court has adopted the two-prong approach set forth in *Strickland* in deciding ineffective assistance of counsel claims. *State v. Harris*, 2001 MT 231, ¶ 18, 306 Mont. 525, ¶ 18, 36 P.3d 372, ¶ 18 (citing *Hagen v. State*, 1999 MT 8, ¶ 10, 293 Mont. 60, ¶ 10, 973 P.2d 233, ¶ 10).

¶15 Under the *Strickland* test, the petitioner must show that counsel's performance was deficient and that the deficient performance prejudiced the defense. *State v. White*, 2001 MT 149, ¶ 11, 306 Mont. 58, ¶ 11, 30 P.3d 340, ¶ 11 (citing *Hagen*, ¶ 10). To that end, we stated in *Harris* that

> the defendant bears the burden of showing that counsel's performance fell below an objective standard of reasonableness. The defendant must overcome a strong presumption that counsel's defense strategies and trial tactics fall within a wide range of reasonable and sound professional decisions.
> The second prong of the *Strickland* test examines the prejudicial impact of counsel's errors, and the defendant must demonstrate the existence of a reasonable probability that the result of the proceeding would have been different absent counsel's unprofessional errors. A reasonable probability is a probability sufficient to undermine confidence in the outcome. When a defendant challenges a conviction, the defendant must show the fact finder's reasonable doubt respecting guilt could have been routed by the unprofessional errors of counsel. In making this determination, a court must consider the totality of the evidence before the judge or jury. When alleged ineffective assistance does not prejudice the defendant to the degree that the outcome is implicated, the claim may be dismissed without evaluating counsel's

6

performance.

*Harris*, ¶¶ 18-19 (citing *Strickland*, 466 U.S. at 688-89, 694-97, 104 S.Ct. at 2064-65, 2068-69) (other internal citations omitted).

¶16     In the case *sub judice*, the State maintains that the District Court correctly determined that because Soraich's ineffective assistance of counsel claims are record based, they should have been raised on direct appeal.  The State argues that because Soraich's claims were not raised on direct appeal, they are procedurally barred from postconviction review by § 46-21-105(2), MCA.  This statute reads, in pertinent part:

> When a petitioner has been afforded the opportunity for a direct appeal of the petitioner's conviction, grounds for relief that were or could reasonably have been raised on direct appeal may not be raised, considered, or decided in a proceeding brought under this chapter.

Section 46-21-105(2), MCA.

¶17     Soraich argues, on the other hand, that his claims are not record based because part of counsel's deficient performance occurred pretrial.  Soraich focuses on defense counsel's pre-trial decision to attack Driver's credibility during opening statements and argues that counsel could not live up to the promises he made to the jury, because he had not reviewed and properly disclosed the investigator's report prior to trial.

¶18     Soraich contends that defense counsel should have known the legal requirements of submitting the investigator's report into evidence before seeking to call the defense investigator as a witness.  In *State v. Miller* (1988), 231 Mont. 497, 513, 757 P.2d 1275, 1285 (citation omitted), this Court determined:

7

> There is no doubt that if an attorney uses at trial a statement he obtained and prepared in anticipation of litigation in interrogating or cross examining a witness, the full statement, even though work-product, must be produced at the demand of the other side. . . . By the use of the statement at trial, the attorney has waived the work-product protection, since the material in the statement has become substantive evidence.

The Court in *Miller* held that the defense investigator's report also fell within the scope of § 46-15-323, MCA, providing for disclosure by the defense, and as such, it should have been provided to the State. *Miller*, 231 Mont. at 514, 757 P.2d at 1286.

¶19 Hence, Soraich maintains that defense counsel should have been aware of the legal requirements for defense investigator testimony as set forth in *Miller* and § 46-15-323, MCA, and that if counsel was not aware of those requirements, then no tactical or strategic reason existed to promise the jury evidence based upon an investigator's testimony which could not be introduced as a matter of law. Soraich also argues that defense counsel should have familiarized himself with the factual makeup of the investigator's entire report and should have been aware of the contents of the report well before telling the jury that he was going to rely on the investigator as a witness.

¶20 In *Harris*, this Court reviewed its recent application of § 46-21-105(2), MCA, to determine whether certain claims of ineffective assistance of counsel should be raised on direct appeal or in a postconviction petition. *Harris*, ¶ 21 (citing *State v. Whitlow*, 2001 MT 208, 306 Mont. 339, 33 P.3d 877; *State v. White*, 2001 MT 149, 306 Mont. 58, 30 P.3d 340; *State v. St. John*, 2001 MT 1, 304 Mont. 47, 15 P.3d 970 overruled in part by *State v. Brister*, 2002 MT 13, 308 Mont. 154, 41 P.3d 314). We outlined a two-step process in *Harris* to

resolve the question.

¶21    First, the record at trial must adequately document a challenged act or omission of defense counsel for the defendant to raise an ineffective assistance claim on direct appeal. *Harris*, ¶ 21 (citations omitted).  Second, in addition to documenting the error, the record available to the Court on appeal must afford sufficient understanding of the reasons for counsel's acts or omissions to answer the threshold question of whether the alleged error expresses a trial strategy or tactical decision.  If the record does not supply the reason for counsel's act or omission, the claim must be raised by petition for postconviction relief. *Harris*, ¶ 21 (citations omitted).

¶22    We set forth in *Harris* the following explanation for deciphering the use of the record and the appropriate forum for adjudicating ineffective assistance claims:

> Though not easily distilled into a formula, the definitive question that distinguishes and decides which actions are record and which are nonrecord, is *why?*  In other words, if counsel fails to object to the admission of evidence, or fails to offer an opening statement, does the record fully explain *why* counsel took the particular course of action?  If not, then the matter is best-suited for post-conviction proceedings which permit a further inquiry into whether the particular representation was ineffective.  Only when the record will fully explain why counsel took, or failed to take, action in providing a defense for the accused may this Court review the matter on direct appeal.

*Harris*, ¶ 21 (quoting *White*, ¶ 20).  We also stated in *Harris* that

> [w]hen a tactical or strategic reason for defense counsel's alleged deficient performance is apparent in the record on appeal or proffered by counsel in post-conviction proceedings, the court must evaluate whether this underlying reason is "reasonable" before indulging the strong presumption demanded by *Strickland* that a tactical or strategic act falls within the wide range of reasonable and sound professional assistance.  When a challenged act or omission reflects an unreasonable defense strategy, stems from neglect or

9

ignorance, or results from a misunderstanding of the law, counsel's deficient performance meets the first prong of the *Strickland* test.

*Harris*, ¶ 22 (internal citations omitted).

¶23 The following facts are documented by the record in the case *sub judice*. Defense counsel, in an attempt to prove that the State's main witness was lying, told the jury the name and function of the investigator he would use to impeach the man Soraich claimed was actually responsible for Jensen's death. However, when it came time to call the investigator as a witness, defense counsel refused to turn over a report prepared by that investigator, thus counsel was barred from presenting the investigator's testimony. The prosecutor then capitalized on counsel's failure to deliver on the promise he made to call the investigator as a witness.

¶24 Based on these facts, Soraich may have been able to satisfy the first criteria for raising an ineffective assistance of counsel claim on appeal. However, the record in this case does not contain any information about *why* defense counsel promised the jury that an investigator's testimony would prove Soraich's defense, but then failed to call the investigator as a witness. The District Court speculated that counsel did not call the investigator as a witness because his report contained information damaging to the defense. However, the District Court's assumption does not answer any of the questions about *why* defense counsel chose to tell the jury he was going to call the investigator to prove his defense in the first place. Without an evidentiary hearing and direct questioning of defense counsel, any guesses on what led to counsel's failure to call the investigator are purely speculative. As was the

10

case in *Harris*, we do not know whether the alleged errors in this case reflect a coherent trial strategy or whether they were reasonable and deserve deference and we refuse to speculate. *Harris*, ¶ 24.

¶25　Because the record is devoid of counsel's pre-trial tactical decisions, Soraich could not satisfy the second requirement for raising an ineffective assistance of counsel claim on direct appeal.  Consequently, § 46-21-105(2), MCA, does not bar Soraich's postconviction assertion of ineffective assistance of counsel at trial.  Moreover, in another postconviction situation, this Court (noting the absence of any factual record) held that "issues of this nature are best resolved after an evidentiary proceeding in the district court." *State v. Bromgard* (1995), 273 Mont. 20, 24, 901 P.2d 611, 614.  *See also State v. Lawrence*, 2001 MT 299, 307 Mont. 487, 38 P.3d 809 (holding that evidentiary hearing was required on petitioner's claim that she was entitled to withdraw guilty plea on ground counsel rendered ineffective assistance).  Therefore, we agree with Soraich that whether defense counsel rendered ineffective assistance in this case is a question that should have been resolved through an evidentiary hearing.

¶26　Accordingly, we hold that the District Court abused its discretion in summarily dismissing Soraich's petition for postconviction relief and we remand to the District Court for an evidentiary hearing to address the second prong of the *Strickland* test.

¶27　Reversed and remanded.

/S/ JAMES C. NELSON

11

We Concur:

/S/ JIM REGNIER
/S/ TERRY N. TRIEWEILER
/S/ W. WILLIAM LEAPHART
/S/ JIM RICE

Justice Patricia O. Cotter, dissenting.

¶28 I would conclude that the District Court did not abuse its discretion in summarily dismissing Soraich's Petition for Postconviction Relief. I therefore dissent from the Court's Opinion.

¶29 As the majority notes in ¶ 10 of its Opinion, the District Court concluded that Soraich should have raised his claim of ineffective assistance of counsel when he filed his direct appeal, because his claim is based upon facts of record in the underlying case. Relying on § 46-21-105(2), MCA, the District Court concluded that by failing to raise a claim of ineffective assistance of counsel on direct appeal, Soraich is precluded from now raising it in a proceeding for postconviction relief. What the majority does not note is that the District Court also concluded that counsel's performance was not deficient and the first *Strickland* prong had therefore not been met. I disagree with the District Court's conclusion that counsel's performance was not deficient, but agree with the District Court that Soraich should have raised his claim for ineffective assistance of counsel on direct appeal.

¶30 As the majority notes at ¶ 17 of its Opinion, Soraich argues here that his attorney made promises to the jury that he could not fulfill, " . . . because he had not reviewed and properly disclosed the investigator's report prior to trial." Court's Opinion, ¶ 17. In addition, the Court notes that defense counsel should have familiarized himself with the factual makeup of the investigator's entire report and should have been aware of its contents well before telling the jury that he was going to rely on the investigator as a witness. Court's

13

Opinion, ¶ 19. I conclude that these matters--that counsel had not reviewed and properly disclosed the investigator's report prior to trial, and that counsel was at fault for failing to familiarize himself with the investigator's report before making promises to the jury--are evident from the record and require no evidentiary hearing to demonstrate.

¶31 In chambers prior to the presentation of the defendant's case, the State moved to exclude Scott Farmer's testimony because Farmer would be refreshing his recollection from an internal memorandum that he prepared, but which had not been produced for review by the State. The District Court denied this motion. The State then moved to have the internal document prepared by Farmer provided to the State, so that the State could review it and properly cross-examine Farmer. In response, defense counsel flatly said "I'm not going to give it to you. I'll give it to the judge. And if he wants to excise, that's fine." (Tr. Vol. VI, pp. 8-9). The court then inquired of defense counsel whether Farmer had reviewed his statement (the colloquy establishes that the inquiry was made to determine whether Farmer had reviewed the statement to refresh his recollection), and defense counsel confirmed that he had. The judge then directed defense counsel to give him the internal memorandum, so that he could read it before Farmer gave testimony. The court indicated that it would allow the State to read what the judge believed to be related to Farmer's testimony. The court then asked defense counsel:

> Is the whole memorandum related to issues about the memorandum [sic] with Driver, do you believe, or is it about other stuff?
>
> DEFENSE COUNSEL: I don't know. I don't want to make a representation. There may be other things in there as well.

14

Defense counsel then went on to state:

> DEFENSE COUNSEL:     Then, I guess if you're going to disclose it in its entirety or even with certain redactions, I would like an opportunity to look at that before I make an ultimate decision.  There may be things in there that really they shouldn't have, in my opinion, and that might change my strategy.

(Tr. Vol. VI, p. 10).

¶32    The transcript makes two things very clear.  First, defense counsel, knowing that Farmer had reviewed his internal memorandum in preparation for his testimony, had not taken into consideration the prospect that the court could compel its production and disclosure to the State.  Second, defense counsel had not familiarized himself with the contents of Farmer's internal memorandum before making representations to the jury about what Scott Farmer's testimony would show.  Thus, he made significant representations to the jury about Scott Farmer's expected testimony without bothering to consider the practical or legal consequences of his statements.  All of this is plainly evident from the record.

¶33    I would conclude that the record demonstrates on its face that counsel rendered ineffective assistance.  I disagree with the majority's conclusion that this matter should be remanded for an evidentiary hearing to inquire *why* defense counsel chose to tell the jury he was going to call the investigator to prove his defense in the first place.  Counsel's ignorance of the law on refreshed recollection and ignorance of the contents of Farmer's memorandum give us the *why:* He was not adequately prepared.  He made a mistake.  He made brash promises in his opening statement without considering the consequences.  The *why* of it is clear from the record.  No hearing is required to draw this conclusion.

15

¶34 In *State v. Thee,* 2001 MT 294, ¶ 8, 307 Mont. 450, ¶ 8, 37 P.3d 741, ¶ 8 (quoting *State v. Aliff*, 2001 MT 52, ¶ 13, 304 Mont. 310, ¶ 13, 21 P.3d 624, ¶ 13), this Court stated, "To constitute ineffective assistance, counsel's challenged actions must stem from ignorance or neglect rather than from professional deliberation." In this case, the record shows that counsel neglected to read a critical document upon which he wished to rely and he was either ignorant of, or failed to consider, what effect production of the document would have on his client until it was too late.

¶35 Upon my review of the record, I conclude this is a classic example of the two-step process this Court outlined in *Harris*: the record documents the challenged act of the defense counsel and it is apparent from the record that defense counsel's act was not a part of his trial strategy or a tactical decision. We have held in numerous cases that when a claim of ineffective assistance of counsel is based on facts of record, it must be raised on direct appeal. See *Hagen v. State*, 1999 MT 8, ¶ 12, 293 Mont. 60, ¶ 12, 973 P.2d 233, ¶ 12; *State v. Wright*, 2001 MT 282, ¶ 6, 307 Mont. 349, ¶ 6, 42 P.3d 753, ¶ 6.

¶35 This being said, we are not being asked here to determine whether counsel was in fact ineffective. The only inquiry before us is whether the District Court abused its discretion in dismissing Soraich's petition for postconviction relief because he should have raised his claim for ineffective assistance of counsel on direct appeal. I would conclude the District Court did not abuse its discretion in reaching that conclusion, and would affirm the order of the District Court.

/S/ PATRICIA COTTER

16

Chief Justice Karla M. Gray joins in the foregoing dissenting Opinion of Justice Cotter.

/S/ KARLA M. GRAY