No. 02-740

IN THE SUPREME COURT OF THE STATE OF MONTANA

2003 MT 284

STATE OF MONTANA,

          Plaintiff and Respondent,

   v.

REGINALD BERNARD ADGERSON,

          Defendant and Appellant.


APPEAL FROM:    District Court of the First Judicial District,
                    In and for the County of Lewis and Clark, Cause No. ADC 2001-195,
                    The Honorable Dorothy McCarter, Judge presiding.


COUNSEL OF RECORD:

       For Appellant:

          Jon G. Moog, Assistant Public Defender, Helena, Montana

       For Respondent:

          Hon. Mike McGrath, Attorney General; Jim Wheelis,
          Assistant Attorney General, Helena, Montana

          Leo J. Gallagher, Lewis and Clark County Attorney, Helena, Montana


Submitted on Briefs: June 12, 2003

Decided:  October 9, 2003

Filed:

_____
                   Clerk

Justice Jim Regnier delivered the Opinion of the Court.

¶1     A jury convicted Reginald Bernard Adgerson for violating Montana's stalking statute, § 45-5-220(1)(b) and (3), MCA, relating to numerous occurrences directed towards Adgerson's former wife during the months of March through July, 2001. He appeals his conviction. We affirm.

## BACKGROUND

¶2     Reginald Adgerson (Adgerson) and Catherine Gordon (Gordon) married in 1995 and later had two children. Gordon separated from Adgerson in the Spring of 2000. She filed her initial dissolution papers with the assistance of Pamela Bucy, an attorney employed by Lewis and Clark County Attorney's Office, and completed the balance of the dissolution with the assistance of a different attorney.

¶3     Gordon worked as a probation and parole officer for the state of Montana, in Helena. As part of her job, Gordon interacted with the Lewis and Clark County Attorney's Office and the Lewis and Clark County Court. As such, Gordon was familiar with the prosecuting attorneys in this case, Michael Menahan and Leo Gallagher. Additionally, she was familiar with all the First Judicial District Court Judges through her work as a probation and parole officer in Helena. Adgerson worked as a car salesman.

¶4     During their separation period, both Adgerson and Gordon were subject to a mutual restraining order. Further, the divorce decree included a parenting plan outlining specific protocol to allow contact solely concerning custody, decision-making, and emergencies regarding the children. However, Adgerson did not comply with the restraining order and

2

was convicted of misdemeanor stalking and contempt, entered by Helena City Court December 18, 2000, and March 15, 2001, respectively.

¶5 Between March and July 2001, Adgerson continuously contacted Gordon via the telephone and while Gordon dropped the children off for visitation regarding issues outside the scope of the parenting plan. He did this in such a manner that frightened Gordon to the point where she feared for her physical safety. Phone records indicate that Adgerson called Gordon many times during the day on numerous occasions. During children exchanges, the two sometimes had heated altercations. The record indicates that some of these encounters contemplated matters within the scope of the parenting plan and other encounters did not concern their children.

¶6 Ultimately, the State charged Adgerson by Information with felony stalking on August 1, 2001. Judge Dorothy McCarter of the First Judicial District heard the case. Adgerson moved to dismiss the Information claiming that § 45-5-220, MCA, was overbroad and vague. The District Court denied his motion. A jury convicted Adgerson of felony stalking on May 30, 2002, and the District Court sentenced him to the Montana Department of Corrections for five years, with two years suspended. From this, Adgerson appeals. We address the following issues on appeal:

¶7 1. Did the trial judge err in failing to recuse herself due to impartiality and did the prosecutor commit misconduct when he failed to remove his office as prosecutor due to impartiality?

3

¶8     2. Was Adgerson denied effective assistance of counsel by trial counsel's failure to move for disqualification of all the judges within the First Judicial District and for failure to move for removal of the prosecutor?

¶9     3. Did the trial court err in failing to grant Adgerson's motion to dismiss because Montana's stalking statute, § 45-5-220, MCA, is unconstitutional both on its face and as applied?

DISCUSSION

ISSUE ONE

¶10     Did the trial judge err in failing to recuse herself due to impartiality and did the prosecutor commit misconduct when he failed to remove his office as prosecutor due to impartiality?

¶11     On appeal, Adgerson claims that Gordon's interaction with the judges of the First Judicial District and the Lewis and Clark County Attorney's Office through her work created an irreparable bias against him which resulted in their having an interest in the outcome of the case. First, Adgerson contends an appearance of impropriety exists because Gordon, as a probation and parole officer, appeared before the First Judicial District Court Judges, including Dorothy McCarter, frequently for work related issues, thus Judge McCarter had an interest in the outcome, and therefore, should have recused herself. Second, he contends that Gordon's interaction with the Lewis and Clark County Attorney's Office and Pam Bucy's work on Gordon's initial filing of dissolution of marriage created an interest such that

4

the office should have disqualified itself from prosecuting Adgerson, and therefore, should have removed itself.

¶12 The State argues that Adgerson did not raise this issue before the District Court, and as such he waived his right to raise it on appeal. We agree with the State. The rule is well established that this Court will not address an issue raised for the first time on appeal. *State v. Peterson*, 2002 MT 65, ¶ 24, 309 Mont. 199, ¶ 24, 44 P.3d 499, ¶ 24 (citing *State v. Weaselboy*, 1999 MT 274, ¶ 16, 296 Mont. 503, ¶ 16, 989 P.2d 836, ¶ 16). A party may not raise new arguments or change its legal theory on appeal, because it is fundamentally unfair to fault the trial court for failing to rule on an issue it was never given the opportunity to consider. *State v. Martinez*, 2003 MT 65, ¶ 17, 314 Mont. 434, ¶ 17, 67 P.3d 207, ¶ 17. The District Court record does not reflect Adgerson's claim, therefore we must limit our review only to issues raised before the District Court.

¶13 In his reply brief, Adgerson urges this Court to address his complaints by invoking the plain error doctrine. *State v. Finley* (1996), 276 Mont. 126, 137, 915 P.2d 208, 215, *overruled on other grounds by State v. Gallagher*, 2001 MT 39, 304 Mont. 215, 19 P.3d 817. The plain error doctrine only applies to limited situations as prescribed in *Finley*. *Finley*, 276 Mont. at 137, 915 P.2d at 215. It applies only "where failing to review the claimed error at issue may result in a manifest miscarriage of justice, may leave unsettled the question of the fundamental fairness of the trial or proceedings, or may compromise the integrity of the judicial process." *Finley*, 276 Mont. at 137, 915 P.2d at 215. We conclude that the plain error doctrine does not apply in the present case.

¶14 Therefore, we cannot address this issue on direct appeal because it has not been properly preserved for our consideration.

ISSUE TWO

¶15 Was Adgerson denied effective assistance of counsel by trial counsel's failure to move for disqualification of all the judges within the First Judicial District and for failure to move for removal of the prosecutor?

¶16 When contemplating ineffective assistance claims, this Court has adopted the two-pronged test set forth by the United States Supreme Court in *Strickland v. Washington* (1984), 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674. The appellant must illustrate that counsel's performance was deficient and that the deficient performance prejudiced the defense. *Hagen v. State*, 1999 MT 8, ¶ 10, 293 Mont. 60, ¶ 10, 973 P.2d 233, ¶ 10. First, to demonstrate deficient performance by counsel, the appellant must show, considering all the circumstances, that counsel's performance fell below an objective standard of reasonableness. *Kills On Top v. State* (1995), 273 Mont. 32, 49, 901 P.2d 1368, 1379. The appellant must overcome the strong presumption that counsel provides a wide range of reasonable professional assistance through defense strategies and trial tactics. *Kills On Top*, 273 Mont. at 49, 901 P.2d at 1379. Second, the appellant must demonstrate that there was a reasonable probability of a different result had counsel not made unprofessional errors. *State v. Harris*, 2001 MT 231, ¶ 19, 306 Mont. 525, ¶ 19, 36 P.3d 372, ¶ 19. Upon such a challenge, the appellant must prove that the fact finder's reasonable doubt respecting guilt could have been directed by counsel's errors, and the court considers the totality of the

6

evidence before the court and jury to determine if there could have been a different outcome. *Harris*, ¶ 19 (citing *Strickland*, 466 U.S. at 695, 104 S. Ct. at 2068-69).

¶17     However, before we can consider the ineffective assistance claim on its merits, it is necessary to consider whether the claim is properly before this Court. Such claims must be based upon facts within the district court record, not on "mere conclusory allegations," in order for an appellant to raise an ineffective assistance claim on direct appeal. *State v. Hulbert* (1988), 232 Mont. 115, 120, 756 P.2d 1110, 1113 (quoting *State v. Tome* (1987), 227 Mont. 398, 403, 742 P.2d 479, 482). Conversely, ineffective assistance claims that cannot be construed from the record in the underlying case must be raised through a petition for postconviction relief. *Hagen*, ¶ 12.

¶18     When it is not clear whether a claim for ineffective assistance is record based, we stated in *Soraich v. State*, 2002 MT 187, 311 Mont. 90, 53 P.3d 878:

> Though not easily distilled into a formula, the definitive question that distinguishes and decides which actions are record and which are nonrecord, is *why?* In other words, if counsel fails to object to the admission of evidence, or fails to offer an opening statement, does the record fully explain *why* counsel took the particular course of action? If not, then the matter is best-suited for post-conviction proceedings which permit a further inquiry into whether the particular representation was ineffective. Only when the record will fully explain why counsel took, or failed to take, action in providing a defense for the accused may this Court review the matter on direct appeal.

*Soraich*, ¶ 22 (citations omitted).

¶19     Adgerson argues that his trial counsel fell below average competence of any Montana attorney when she failed to note the potential relationship conflicts and motion the District Court for recusal or disqualification. Further, he alleges that these omissions deprived him

of a trial free from the appearances of impropriety, thus meeting both prongs of the *Strickland* test. Adgerson points out that the record reveals that Gordon, as a probation officer, frequented Judge McCarter's courtroom, worked with the Lewis and Clark County Attorney on a regular basis, and had an attorney/client privilege between herself and Deputy County Attorney, Pam Bucy. He contends that the void in the record–his trial counsel's failure to object to documented alleged improper relationships–should serve as evidence within the record substantiating his claim.

¶20 The State counters that the record does not conclusively reflect an obvious impropriety merely because it documents that a probation officer regularly appeared in front of a certain judge or that a probation officer worked along side a county attorney's office on some cases, thus Adgerson's ineffective assistance claim cannot be ascertained from the facts within the record. Therefore, Adgerson should pursue his claims in a postconviction relief proceeding because his allegations are not record based. We agree with the State.

¶21 According to *Soraich*, this Court must ask if *why* trial counsel did not object to Gordon's relationships with the District Court and Attorney's Office is apparent from the record. The record indicates that trial counsel was aware of these alleged improper relationships. However, there is no evidence of any objection to those relationships or evidence as to why defense counsel chose not to object to those relationships. There is simply insufficient information in the record for us to conclusively determine if defense counsel's failure to object to these relationships was due to reasonable defense strategies or trial tactics, or if it was due to ineffective assistance. In turn, this Court refuses to take such

leaps to speculate as to *why* counsel went down a certain defense strategy path without facts to support such determinations. To permit inquiry into the alleged errors of Adgerson's trial counsel, his ineffective assistance claim would be properly asserted through a petition for postconviction relief in compliance with §§ 46-21-101 through -105, MCA.

¶22 Accordingly, we find that Adgerson's ineffective assistance of counsel claim is not properly before this Court and we choose not to address it on its merits.

ISSUE THREE

¶23 Did the trial court err in failing to grant Adgerson's motion to dismiss because Montana's stalking statute, § 45-5-220, MCA, is unconstitutional both on its face and as applied?

¶24 The grant or denial of a motion to dismiss in a criminal case is a question of law which is reviewed *de novo* on appeal. *State v. Beanblossom*, 2002 MT 351, ¶ 9, 313 Mont. 394, ¶ 9, 61 P.3d 165, ¶ 9. This Court's standard of review is plenary, and we determine whether a district court's conclusion is correct. *Beanblossom*, ¶ 9. When resolution of an issue on appeal involves a question of constitutional law, we review to determine whether the court's interpretation of the law is correct. *Matter of S.L.M.* (1997), 287 Mont. 23, 32, 951 P.2d 1365, 1370.

¶25 First, Adgerson challenges the constitutionality of § 45-5-220, MCA. Specifically, he asserts that the statute unconstitutionally deprives him of the right to parent his children, rights to family privacy, and rights to happiness and individual dignity, claiming the statute

9

is vague and overbroad because the terms "harassing," "repeatedly," and "intimidating" are capable of numerous meanings. Section 45-5-220, MCA, states in pertinent part:

> (1) A person commits the offense of stalking if the person purposely or knowingly causes another person substantial emotional distress or reasonable apprehension of bodily injury or death by repeatedly:
> (a) following the stalked person; or
> (b) harassing, threatening, or intimidating the stalked person, in person or by phone, by mail, or by other action, device, or method.
> (2) This section does not apply to a constitutionally protected activity.

¶26 This Court has already considered the constitutionality of this statute in *State v. Martel* (1995), 273 Mont. 143, 902 P.2d 14. In *Martel*, the appellant argued that the statute was vague because the legislature failed to define the exact words that Adgerson now challenges. In finding that the statute was not vague in relation to these designated words, we stated:

> Words such as "repeatedly," "harassing," and "intimidating" have commonly understood meanings. "Repeatedly" means "more than once." "Intimidate" means "to make timid; to frighten." "Harass" means "to annoy repeatedly." A person of average intelligence would recognize and understand these terms without recourse to legislative definitions.

*Martel*, 273 Mont. at 150, 902 P.2d at 19 (citations omitted). Adgerson urges us to consider the Kansas Supreme Court's decision in *State v. Bryan*, in which that court expressed concern regarding statutes that used words such as "alarms" or "annoys" because they are subject to a variety of interpretations, and without an objective standard, interpretation of such words are entirely dependent upon a victim's subjective feelings. *State v. Bryan* (Kan. 1996), 910 P.2d 212, 217. However, this Court found in *Martel*, that the terms Adgerson now challenges, were commonly understood and not subject to a variety of interpretations,

thus we are not persuaded by *Bryan* and see no reason to change our interpretation of the terms set out in *Martel*.

¶27     In response to Adgerson's overbroad claim, we again look to our decision in *Martel*. An overbroad statute is one that forbids or burdens constitutionally unprotected activity, but by construction, also prohibits constitutionally protected activity. *Martel*, 273 Mont. at 152-53, 902 P.2d at 20. In *Martel*, while considering whether this statute was overbroad, we stated, "the statute serves a plainly legitimate purpose–to discourage the repeated, intentional, harmful conduct which constitutes stalking." *Martel*, 273 Mont. at 153, 902 P.2d at 20. When claiming that a statute is unconstitutional, the appellant must also illustrate how the alleged overbreadth is both "real" and "substantial," not only as applied to him, but how it is overbroad as applied to others. *Martel*, 273 Mont. at 153, 902 P.2d at 20. This Court found that Martel did not assert any specific arguments alleging infringement of the appellant's or other's constitutionally protected First Amendment activities. Adgerson has failed to do so as well, merely asserting that he should have been granted an evidentiary hearing to provide such facts. Absent specific examples of such infringement, we find that Adgerson's overbreadth argument must fail.

¶28     Next, Adgerson argues that the statute is not constitutional as applied to him because it denies him the right to parent his children, rights to family privacy, and rights to happiness and individual dignity. To address this argument, we review the constitutional activity exception, under subsection (2) of the stalking statute. Adgerson argues that his constitutional rights to parent his children, to family privacy, and to happiness and individual

11

dignity fit within this exception of the stalking statute, therefore the District Court erred by not granting his motion to dismiss. The legislature inserted the subsection (2) constitutional activity exception to protect "potential constitutional problems such as attempts to enforce the statute against investigative reporters or people walking a picket line." *Martel*, 273 Mont. at 153-54, 902 P.2d at 21. However, we stated in *State v. Helfrich*, "[d]epending upon the nature, timing, context and frequency of the [constitutionally protected activity, such activity] . . . may or may not be a constitutionally protected activity under § 45-5-220(2), MCA." *State v. Helfrich* (1996), 277 Mont. 452, 459, 922 P.2d 1159, 1163.

¶29 The exception directs us to evaluate the nature, timing, context and frequency of Adgerson's alleged constitutionally protected activity. This Court has held that threats are not protected speech. *State v. Cooney* (1995), 271 Mont. 42, 49, 894 P.2d 303, 307. Additionally, we have said that activity intended to embarrass, annoy or harass is not protected speech. *Helfrich*, 277 Mont. at 460, 922 P.2d at 1164. While complying with the parenting plan, Adgerson contacted Gordon concerning decision-making for their children. However, he also contacted her repeatedly about issues not related to their children in ways that frightened Gordon to a point where she feared for her safety. When we consider the facts of this case in conjunction with our holding in *Helfrich*, we find that some but not all of Adgerson's communications with Gordon are constitutionally protected. In denying his motion to dismiss, the District Court properly found that "the conduct for which Adgerson is being prosecuted, as alleged by the State, has nothing to do with his own personal happiness and dignity; it was intended to harass and intimidate his former wife." Therefore,

12

this Court concludes that Adgerson's contacts with Gordon were not constitutionally protected and thereby did not meet the § 45-5-220(2), MCA, exception.  As such, we find the trial court properly denied Adgerson's motion to dismiss, and we affirm the District Court.

/S/ JIM REGNIER

We Concur:

/S/ JIM RICE
/S/ JAMES C. NELSON
/S/ W. WILLIAM LEAPHART
/S/ JOHN WARNER