DA 20-0613

FILED

05/24/2022

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 20-0613

IN THE SUPREME COURT OF THE STATE OF MONTANA

2022 MT 98N

JASON DEAN FRANKS,

　　　　　Petitioner and Appellant,

　　v.

STATE OF MONTANA,

　　　　　Respondent and Appellee.

APPEAL FROM:　　District Court of the Eleventh Judicial District,
　　　　　　　　In and For the County of Flathead, Cause No. DV-18-967(C)
　　　　　　　　Honorable Heidi J. Ulbricht, Presiding Judge

COUNSEL OF RECORD:

　　　　　For Appellant:

　　　　　　　Penelope S. Strong, Attorney at Law, Billings, Montana

　　　　　For Appellee:

　　　　　　　Austin Knudsen, Montana Attorney General, Mardell Ployhar,
　　　　　　　Assistant Attorney General, Helena, Montana

　　　　　　　Travis R. Ahner, Flathead County Attorney, Kalispell, Montana

　　　　　　　　　　　Submitted on Briefs:　April 27, 2022
　　　　　　　　　　　　　　　　Decided:　May 24, 2022

Filed:

_____
　　　　　　　　Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1     Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2     In 2016, a Flathead County jury convicted Appellant Jason Franks of sexual intercourse without consent. The jury concluded that the State had proven its charge that in 2007, Franks raped the 11-year-old daughter of his roommate at the time. The victim came forward to report the crime in 2010. She testified that one Saturday morning while her father was at work, Franks assaulted her in his bedroom shortly after she had gotten up for breakfast. She then retreated to her bedroom and tried to sleep most of the day. She recalled that it was dark out when she later emerged after her father returned from work.

¶3     The 2016 conviction followed Franks's second trial. Franks had appealed his first conviction, and this Court reversed and remanded for a new trial because of the use of inadmissible evidence about a prior accusation against him. *State v. Franks*, 2014 MT 273, 376 Mont. 431, 335 P.3d 725. After the jury in the second trial reached a guilty verdict, the District Court sentenced Franks to 100 years in prison.

¶4     Franks was represented by five different attorneys through his two trials. One attorney represented Franks through the first trial. A second worked with Franks for about eight months while preparing for the second trial, before withdrawing at Franks's request.

2

A third attorney then represented Franks for about three months before Franks discharged him, too. The fourth and fifth attorneys worked together on Franks's case through the second trial. At his sentencing hearing, Franks then insisted upon discharging these lawyers, too, and representing himself. He recommended that the District Court give him a long sentence.

¶5 Franks appealed his second conviction to this Court, and in 2017, we affirmed. *State v. Franks*, 2017 MT 225, 388 Mont. 486, 402 P.3d 1190. In 2018, appearing pro se, Franks filed a petition for postconviction relief in the District Court. Franks's petition alleged that all his attorneys from both trials had provided ineffective assistance of counsel (IAC). Franks filed an affidavit explaining the reasons he thought each of the attorneys' services was deficient. The District Court received affidavits from all the attorneys describing and explaining their conduct while representing Franks.

¶6 Based on the affidavits and on briefing from Franks and the State, the District Court dismissed Franks's petition through an order on December 14, 2020. The District Court found that Franks had not met his burden to show that his counsels' performance had been deficient. Franks appeals that order to this Court.

¶7 We review a district court's denial of a petition for postconviction relief to determine whether the court's findings of fact are clearly erroneous and whether its conclusions of law are correct. *Heath v. State*, 2009 MT 7, ¶ 13, 348 Mont. 361, 202 P.3d 118. We address IAC claims by applying a two-part test that considers whether the petitioner has met their burden to demonstrate that (1) the counsel's performance was

deficient; and (2) the deficient performance prejudiced the defense. *Baca v. State*, 2008 MT 371, ¶ 16, 346 Mont. 474, 197 P.3d 948.

¶8 On appeal, Franks makes three general arguments about why the District Court erred in finding he established no viable IAC-based claim for postconviction relief. First, Franks focuses on his allegations that several of his attorneys were deficient in failing to develop and present evidence about his alibi regarding the day of the rape. Second, and relatedly, Franks focuses on the fact that his counsel in the second trial mentioned to the jury, but then did not present, the testimony of a friend he had eaten lunch with that day. Third, Franks alleges that his attorney in his first trial was deficient by encouraging him to testify that he could not recall the day in question. Franks argues that he presented substantial enough claims on these points that the District Court erred in dismissing his complaint and refusing to hold an evidentiary hearing.

¶9 Franks's allegations about the deficient investigation and presentation of his alibi were insufficient to provide him relief. The victim's testimony related that she went to bed after the rape and then saw Franks in the apartment later, after dark, when she emerged after her father returned home. According to Franks, this testimony amounts to an assertion that he was home "all day." Thus, Frank contends that his attorneys needed to investigate and present more evidence about his interactions with friends during lunch and in the afternoon and evening, even if only to undercut the credibility of the victim. But the victim's testimony did not actually assert that Franks was home "all day." She only mentioned that she saw him in the morning and later in the evening. Franks cannot demonstrate the prejudice to his defense required to establish IAC because even if his

4

attorneys had prepared more evidence of his afternoon and evening whereabouts, this evidence would have done nothing to refute the victim's account of the rape in the morning. As one of Franks's attorneys pointed out in his affidavit, part of his strategic thinking was that placing too much emphasis on the rest of the day would only serve to highlight Franks's inability to account for the morning.

¶10 Furthermore, Franks's petition for postconviction relief and supporting affidavit contained little more than bare assertions that his attorneys' alibi preparation was deficient. *See Kills On Top v. State*, 279 Mont. 384, 396, 928 P.2d 182, 189 (1996) (IAC claims "must be grounded on facts in the record and not merely on conclusory allegations."). The attorneys presented the District Court with documentation of their attempts to obtain bank records, phone records, and other evidence that Franks requested to substantiate his alibi. All Franks's attorneys prior to the second trial contacted Franks's alibi witnesses and explored their ability to provide a defense. His attorneys in the second trial presented testimony from one friend who described dining with Franks in the evening. Beyond his conclusory allegations, Franks has failed to demonstrate what additional alibi evidence his attorneys failed to develop that would have "produced a different result" in the case. *Weaver v. State*, 2005 MT 158, ¶ 21, 327 Mont. 441, 114 P.3d 1039; *see also Hamilton v. State*, 2010 MT 25, ¶ 16, 355 Mont. 133, 226 P.3d 588 (noting that a petitioner must show that additional "information would have been admissible and effective").

¶11 Franks's focus on his attorneys' decision not to present testimony from the friend he ate lunch with suffers similar problems, and Franks did not meet his burden to demonstrate why this tactical decision could rise to IAC. This friend's testimony also

5

would not contradict the victim's story about the rape in the morning. Thus, Franks cannot establish that the jury would likely have reached a different outcome had the friend testified. Furthermore, Franks's attorneys explained why they feared that the friend's likely "extremely excited" approach to testifying ran the risk of opening the door to the State presenting character evidence that would have harmed Franks's defense to a much greater degree than the testimony might benefit it. "Counsel's decisions relating to presenting [the] case, including whether to introduce evidence or produce witnesses, generally constitute matters of trial tactics and strategy[,] and we will not find [an] ineffective assistance of counsel claim in counsel's tactical decisions." *Weaver*, ¶ 25.

¶12 Franks shifts his argument about this friend's testimony to focus on the fact that his attorney told the jury in opening argument that the friend would testify, then made the decision not to call him. Franks cites a case in which we held that an evidentiary hearing on IAC was warranted after a murder trial in which the defense counsel promised the jury exculpatory evidence that would point the finger at another culprit, but failed to follow through because this strategy depended on evidence that was inadmissible. *See Soraich v. State*, 2002 MT 187, 311 Mont. 90, 53 P.3d 878. Franks likens his attorneys' conduct to that in *Soraich*. He attempts to distinguish it from another case in which we held that an unfulfilled promise that a defendant would testify was not prejudicial enough to support an IAC claim. *See Hamilton*, ¶¶ 22-23. But unlike in *Soraich*, Franks has not pointed to an attorney's substantive legal error, only a tactical decision he disagrees with. And Franks, again, cannot demonstrate he was prejudiced by the decision because the friend's testimony

6

that Franks was out during lunch would have little likelihood of altering the jury's findings about his conduct around breakfast-time.

¶13     Finally, Franks argues that his first trial counsel was deficient because Franks testified in the first trial that he did not recall where he went on the day in question. Franks accuses his first trial counsel of advising him to perjure himself with this testimony, which the State cited in the second trial in which Franks did not testify. But as Franks's first trial counsel explained to the District Court, prior to the first trial, Franks told him that he was unsure exactly where he was that day—several years had passed. Franks did not explain his alibi about his lunch and dinner outings until his preparation for the second trial. Thus, it was perfectly appropriate for his first trial attorney to advise him to testify consistently with what he told that attorney—to advise otherwise, in fact, would have been closer to suborning perjury. Furthermore, Franks cannot demonstrate why alleged ill advice about his testimony in the first trial would have prejudiced his second trial sufficiently to support his petition challenging that conviction. At his second trial, the State noted that Franks's earlier testimony described an inability to remember the relevant day years earlier—a minor point and one that does not contradict any of the evidence Frank raised in defense at the second trial. The District Court did not err in concluding that Franks could not establish a viable IAC claim against his first trial counsel or any of those that worked on his second trial.

¶14     We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. In the opinion of the

7

Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review.

¶15    The District Court's December 14, 2020 order of dismissal is affirmed.


/S/ MIKE McGRATH


We Concur:

/S/ LAURIE McKINNON
/S/ JAMES JEREMIAH SHEA
/S/ INGRID GUSTAFSON
/S/ JIM RICE