Justice Jim Rice delivered the Opinion of the Court.
***310 ¶1 Tony Dwade Sawyer (Sawyer) was convicted of one count of deliberate homicide, in violation of § 45-5-102, MCA, and two counts of attempted deliberate homicide, in violation of §§ 45-5-102 and 45-4-103, MCA, after jury trial in the Second Judicial District Court, Silver Bow County. He asserts his trial counsel rendered ineffective assistance and seeks a new trial. We affirm the conviction without prejudice to Sawyer pursuing his ineffectiveness claim in postconviction proceedings, and consider the following issue:
Is Sawyer's ineffective assistance of counsel claim appropriately considered on direct appeal?
*932 FACTUAL AND PROCEDURAL BACKGROUND
¶2 In 2014, Sawyer and Steve Drury (Drury) met while both were incarcerated in Texas. After their release, Drury returned to his home in Whitehall, Montana, and Sawyer remained in Texas. The two men stayed in contact. In October 2015, after being charged with domestic assault in Texas, Sawyer asked Drury if he could come to Montana to find work. Drury invited Sawyer to stay with him, and Sawyer arrived at the Butte bus station on the morning of November 2, 2015, where Drury picked him up. Sawyer and Drury ran errands and smoked methamphetamine together. That evening, Drury invited two friends over to his house, Hunter Smith (Smith) and Joe Powers (Powers). The men smoked drugs and mounted laser sights on one or more firearms.
¶3 Drury kept many guns in his home, including a Hi-Point 9-millimeter pistol that Sawyer liked and was interested in acquiring. Sawyer carried the Hi-Point most of the afternoon and evening, then went to bed early. Sawyer contends Drury's friends did not like him and that he overheard Drury tell them that Drury would "take care of it" by taking Sawyer to the mountains the next day to kill him, and ***311 make it look like a hunting accident. Sawyer alleges he was "really scared," and that Drury was angry at him for being afraid.
¶4 The next day, Sawyer apologized to Drury for annoying him and his friends. Drury told Sawyer that he had not bothered anyone. Sawyer offered for Drury to take him to a homeless shelter in Butte, but Drury told Sawyer that was unnecessary. Drury and Sawyer spent the rest of the day running errands and working on Drury's truck. That evening, Smith, Powers, and Drury decided to drive to a remote area near Fish Creek to shoot clay pigeons with laser mounted guns. They invited Sawyer to come, and he accepted. The men took four guns, including the Hi-Point pistol, which Sawyer carried.
¶5 While driving on Fish Creek Road, the vehicle got stuck in the snow. All four men exited and worked on freeing the vehicle, but as they worked Sawyer disappeared into the woods. Drury, Smith, and Powers assumed Sawyer had walked to find help. Drury, Smith, and Powers freed the vehicle and Drury drove it to the top of a hill. Smith and Powers, unarmed, were walking up the road behind the vehicle when Sawyer approached and shot both of them. Sawyer then walked to the vehicle and confronted Drury, stating "You ain't going to kill me, Steve Drury[,]" and pointed the gun at Drury. Drury attempted to swat the gun away, but was shot by Sawyer. Drury ran as Sawyer continued shooting at him. Sawyer got into the vehicle and drove away. Smith called 911. Powers died from his gunshot wound, while Smith survived a gunshot wound to the chin and Drury survived a gunshot wound to the shoulder. Sawyer was arrested on November 4 in Idaho Falls, Idaho.
¶6 On December 18, 2015, the State charged Sawyer with one count of deliberate homicide and two counts of attempted deliberate homicide. Trial was held September 12-19, 2016. Sawyer did not testify at trial. The jury heard Sawyer's account of what occurred through two video interviews taken by law enforcement following the shooting-the first on November 4, 2015, and the second on November 12, 2015-which were offered by the State. Sawyer's counsel did not object to the introduction of the two video interviews. In the videos, Sawyer explained his criminal past, including meeting Drury while incarcerated in Texas, a DUI charge, a domestic assault charge for fighting with his wife, and an aggravated assault with a deadly weapon charge for chasing his neighbor with a knife. The District Court gave the jury two cautionary instructions before playing the first interview video. The cautionary instructions informed the jury that the evidence was admitted only to explain how Sawyer and Drury met and how Sawyer ended up in Montana, and should not be used for any other ***312 purpose. A defense expert referred to Sawyer's domestic assault charge during her testimony, stating that "Mr. Sawyer had said that he and his wife had gotten into a rather heated argument. The police were called, and he was arrested for a misdemeanor charge at that point.... he was then arrested and he was jailed for a period of about two days." *933 ¶7 Prior to trial, Sawyer's counsel filed a notice of intent to use prior crimes, wrongs, or acts by alleged victims and notice of intent to use evidence under the transaction rule, § 26-1-103, MCA, as obtained by way of Sawyer's interview with law enforcement on November 12, 2015. Sawyer alleged that the interview constituted evidence regarding "the motive, opportunity, intent, or plan of [Powers], [Drury], and/or [Smith] to kill [Sawyer] on, or near Fish Creek Road, on November 3, 2015." In its memorandum and order on the motion, the District Court stated, "Defendant intends to use his prior statements to investigators as evidence at trial regardless of whether he exercises his constitutional right to testify." The District Court denied Sawyer's requested use of the evidence.
¶8 At trial, Sawyer offered the defenses of justifiable use of force and extreme mental or emotional distress. The jury convicted Sawyer on all three counts.
¶9 Sawyer appeals.
STANDARD OF REVIEW
¶10 Ineffective assistance of counsel (IAC) claims are mixed questions of law and fact, which we review de novo. Whitlow v. State , 2008 MT 140, ¶ 9, 343 Mont. 90, 183 P.3d 861.
DISCUSSION
¶11 Is Sawyer's ineffective assistance of counsel claim appropriately considered on direct appeal?
¶12 Sawyer argues he was denied effective assistance of counsel by his attorney's failure to object to irrelevant, highly prejudicial evidence concerning his criminal past in the two video interviews admitted at trial. Sawyer argues he was prejudiced by his counsel's inaction because there is a reasonable probability that had the jury not learned of Sawyer's violent past, it would have found him not guilty based on justifiable use of force, or guilty of the lesser-included offenses of mitigated deliberate homicide and mitigated attempted deliberated homicide. Sawyer argues his claim is appropriate for direct appeal rather than postconviction relief because there was no plausible justification for his counsel's failure to object to the irrelevant and ***313 prejudicial evidence. The State responds that Sawyer's IAC claim is inappropriate for direct appeal because the record does not indicate why his counsel failed to object, and notes defense counsel sought to introduce the video evidence as indicated in his pre-trial motion, and, thus, it is not clear whether his counsel's inaction was a reasonable tactical decision or a mistake.
¶13 Defendants have the right to effective assistance of counsel in criminal prosecutions under the Sixth and Fourteenth Amendments to United States Constitution and Article II, Section 24 of the Montana Constitution. State v. Johnston , 2010 MT 152, ¶ 15, 357 Mont. 46, 237 P.3d 70. When considering whether to review an IAC claim on direct appeal, we first must determine whether the claim is based on the trial record. State v. Robinson , 2009 MT 170, ¶ 29, 350 Mont. 493, 208 P.3d 851. The record "must adequately document a challenged act or omission of defense counsel for the defendant to raise an ineffective assistance claim on direct appeal." Soraich v. State , 2002 MT 187, ¶ 21, 311 Mont. 90, 53 P.3d 878. Thus, we will address an IAC claim on appeal "[i]f the record on appeal explains why counsel did not do something[.]" Robinson , ¶ 29 (internal quotations omitted). On the other hand, we will not address the claim on appeal and instead allow a defendant to raise the issue in a postconviction proceeding "[i]f the claim is based on matters outside the record on appeal" to develop a record "as to why counsel omitted some action[.]" Robinson , ¶ 29 (internal quotations omitted).
¶14 The record here establishes that Sawyer's counsel did not object to the State's introduction of the two video interviews, or the expert's testimony referring to the domestic assault charge, and also contains discussion by trial counsel, during a pre-trial hearing, about the defense's intended use of the evidence, depending on what occurred at trial, and about the need for a cautionary instruction:
Well, Your Honor, I think that the justifiable use of force, at least, does come in through the statement that Mr. Sawyer *934 made to the detectives. And I don't think the State intends not to play any of those portions of these interviews. As for the -- what he knew about the assault conviction, what Mr. Sawyer knew about Steve Drury's assault conviction in Texas, that -- I would probably agree that that's going to be a matter that we have to make a call after the State rests as to whether or not I put Mr. Sawyer on the stand.... As for the drug charge, Mr. Drury was, in fact, convicted in Texas.... But it is clear that these two men met in jail down in Texas. And I do want to be able to get into that. I'm going to work on a cautionary instruction to give the jury that they're not to ***314 speculate as to why the two of them are in jail. The meth situation, however, may change depending upon what Mr. Drury testifies at trial. Because the State just found out yesterday there was meth pipes, some methamphetamine and some marijuana found in the safe of Steve Drury's -- in his house in Whitehall.... I interviewed Mr. Drury yesterday. I don't know at this point what he's going to say about any of that, but that may open the door to our getting into the fact that he was in jail in Texas for meth. I don't intend to talk about his ever being convicted of it because I don't believe that would ever be admissible under our rules. But I think it would support Mr. Sawyer's belief that Mr. Drury -- because I did provide the Court the DVD of his interview, where he makes it clear that after he got up here he really believed Mr. Drury was a meth dealer. And I think he does talk about what he knew about him in Texas....
...
I mean, but I think it's important to explain to the jury how they met and why they end up together up in Montana. And, quite frankly, Your Honor, Mr. Drury, yesterday, told me, and he said this in his interview with Detective Jurenic, that 'Mr. Sawyer owed me for all the coffee I bought him while in jail.' Well, fine. But I think that's admissible as to why [Sawyer's] staying in Mr. Drury's house when he comes here.
¶15 At the motions hearing, the District Court speculated that defense counsel could use the video interviews to argue "Mr. Drury's assault conviction or other information Mr. Sawyer may have gained in Texas goes to [Drury's] reputation for violent conduct or assaultive behavior and ... puts [Sawyer] on alert that he may have to defend himself[.]" The State posits in its appellate briefing that, to secure this purpose, Sawyer's counsel may have decided not to object to the admission of the video interviews because the prosecutor might have decided it was not worth the trouble in light of the defense's objections, leaving Sawyer without the ability to tell his version of the facts or support his justifiable use of force defense without testifying and being subject to cross-examination.
¶16 While the record is sufficient to defeat Sawyer's argument that there was "no plausible justification" for defense counsel's failure to object to admission of the evidence, it does not clearly demonstrate why counsel chose not to object to admission of the videos, attempt to redact portions of the videos, or offer a further cautionary instruction, and why counsel did not avoid or address the defense expert's testimony about Sawyer's domestic assault charge. Answers to these questions ***315 would require speculation on our part. "[W]e do not know whether the alleged errors in this case reflect a coherent trial strategy or whether they were reasonable and deserve deference and we refuse to speculate." Soraich , ¶ 24. "Claims involving omissions of trial counsel are often ill-suited for direct appeal." Robinson , ¶ 29.
¶17 For these reasons, the judgment is affirmed without prejudice to Sawyer raising his IAC claim in a postconviction relief proceeding. See State v. Notti , 2003 MT 296, ¶ 10, 318 Mont. 146, 79 P.3d 289. In that event, and upon Sawyer's appropriate application, the District Court shall order the assignment of postconviction counsel to represent Sawyer on the claim, in the interests of justice. Section 46-21-201(2), MCA.
¶18 Affirmed.
We concur:
MIKE McGRATH, C.J.
LAURIE McKINNON, J.
DIRK M. SANDEFUR, J.
INGRID GUSTAFSON, J.