Justice Beth Baker delivered the Opinion of the Court.
***156 ¶1 Robert Matthew Wittal appeals an Eleventh Judicial District, Flathead County, jury verdict finding him guilty of deliberate homicide. Wittal claims ineffective assistance of counsel after his trial attorney objected to instructing the jury that accomplice testimony must be viewed with distrust and must be corroborated. We affirm.
PROCEDURAL AND FACTUAL BACKGROUND
¶2 David Toman told police in June 2016 that he had witnessed a murder approximately two weeks prior. He led officers to a wooded area near Echo Lake where they found Wade Rautio's body beneath a log in the creek. An autopsy later revealed that Rautio had been stabbed twenty-five times, including fatal cuts to the jugular vein and carotid artery. Law enforcement arrested Melisa Crone, Christopher Hansen, Toman, and Wittal for their involvement in Rautio's murder. The State claimed that Crone was a drug dealer who had ordered Wittal to kill Rautio over a drug debt. The State charged Wittal with deliberate homicide. It separately charged Toman, Hansen, and Crone with accountability to deliberate homicide. Wittal's case proceeded to trial, and the jury convicted him. We summarize the evidence relevant to his claim on appeal.
¶3 Crone and Hansen lived together. Toman, Rautio, and Wittal also were staying at the house. Toman testified he drove with Hansen, Wittal, and Rautio out to the woods near Echo Lake after Crone kicked Rautio out of the house for allegedly stealing from her. Wittal, holding ***157 a large knife, told Rautio to get out of the car and to empty out his *1041 pockets. Upon entering a bushy area near the creek, Wittal began striking Rautio with the knife on his legs and arms. Toman stated that Wittal "was just slashing at [Rautio], just swinging his knife." Rautio exclaimed, "I'm innocent. Please don't kill me." Toman saw Wittal stab Rautio on the top of the head. Crone testified that Wittal told her that he stabbed Rautio about 100 times, including through the skull.
¶4 Hansen testified that he was under the impression they were going to "thump on" Rautio for stealing drugs from Crone. Hansen heard Wittal tell Rautio to get out of the car, and Wittal pulled out a "Bowie" knife. Hansen had heard Wittal say the night before that Wittal wanted to stab Rautio. Hansen saw Rautio run from Wittal toward the creek and back to the car. Hansen admitted striking Rautio to prevent him from escaping. At some point, Rautio tripped and fell over onto his back, "where Wittal was slashing on him with that big machete, that big knife." Hansen saw Wittal eventually lose the Bowie knife in the creek during the chase and struggle. Hansen admitted that he gave Wittal a second knife, which authorities later identified as the final murder weapon. Hansen claimed that he had nothing more to do with the murder other than hiding that knife after Wittal gave it back to him. Law enforcement officers found a large knife in the creek upstream from Rautio's body and the other knife at Hansen's workplace.
¶5 The State called two additional witnesses who were present at Crone's house before Wittal and the others left with Rautio and after they returned without him. Both testified to statements they overheard and to observations they made about the appearance of the men, including Wittal's wet clothing, and to seeing him put clothes in the fireplace. The prosecution also entered evidence from Wittal's cell phone, including text messages, phone numbers called, and cell phone locations.
¶6 Wittal took the stand in his own defense. He claimed that he was not involved in Rautio's murder and was not present when Rautio was killed. Wittal asserted that Crone had stolen his phone, and it was not in his possession when the text messages were sent or calls were made. Wittal's theory in essence was that Crone, Thomas, and Hansen planned and carried out the homicide, and the three of them set him up to take the fall.
¶7 At the conclusion of the evidence, the State proposed an accomplice jury instruction:
Testimony has been presented that the witness DAVID TOMAN, CHRISTOPHER HANSEN, AND/OR MELISA CRONE may be ***158 legally accountable for the offense charged in this case. In this respect, you are to be guided by the following rules of law:
1. A person is legally accountable for the conduct of another when: Either before or during the commission of the offense of Deliberate Homicide, with the purpose to promote or facilitate the commission, the person solicits, aids, or attempts to aid the other person in the planning or the commission of that offense.
2. It is a question of fact for the jury to determine from the evidence and from the law as given you by me whether or not in this particular case the witness DAVID TOMAN, CHRISTOPHER HANSEN AND/OR MELISA CRONE is or is not legally accountable within the meaning of the law.
3. The testimony of one legally accountable ought to be viewed with distrust.
4. A conviction cannot be had on the testimony of one legally accountable unless the testimony is corroborated by other evidence that in itself and without the aid of the testimony of the one responsible or legally accountable for the same offense tends to connect the defendant with the commission of the offense. The corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof.
¶8 Wittal's counsel objected to the instruction. Although he agreed that their testimony should be viewed with distrust, he took issue with other portions of the instruction, particularly that the jury was to determine whether Toman, Hansen, or Crone was legally accountable. Counsel suggested that it would confuse the jury because "[t]he issue we're *1042 here for is whether or not Robert Wittal did or did not commit this homicide ...." He believed it would be confusing to the jury "why they're evaluating whether [Toman, Hansen, and Crone] are or are not legally accountable." The District Court agreed that could be confusing. The court noted that failure to request an accomplice instruction may be a tactical decision when the proffered defense was that the "defendant was not present at the scene of the crime and therefore was not an accomplice." Ultimately, the court left it to the defense whether it wanted the instruction offered. Wittal's counsel said that he did not want to offer the instruction because he was "concerned that the jury gets concerned [sic] about whether they're now evaluating [Toman, Hansen, and Crone] as to whether they did or did not because my client was not there ...." The court did not give the instruction.
¶9 The District Court sentenced Wittal to 100 years for deliberate homicide, with an additional ten-year weapon enhancement.
***159 STANDARD OF REVIEW
¶10 A defendant's claim of ineffective assistance of counsel is a mixed question of law and fact that this Court reviews de novo. State v. Root , 2015 MT 310, ¶ 8, 381 Mont. 314, 359 P.3d 1088.
DISCUSSION
¶11 Article II, Section 24, of the Montana Constitution and the Sixth Amendment to the United States Constitution, applicable to the states through the Fourteenth Amendment, guarantee a person the right to the effective assistance of counsel. This Court applies the two factors enunciated in Strickland v. Washington , 466 U.S. 668, 104 S. Ct. 2052, 80 L.Ed.2d 674 (1984), to evaluate claims of ineffective assistance of counsel. The defendant must demonstrate (1) that his counsel's performance fell below the range of competence required of attorneys in criminal cases and (2) that his counsel's deficient performance prejudiced his case. Whitlow v. State , 2008 MT 140, ¶ 10, 343 Mont. 90, 183 P.3d 861. There is a strong presumption in favor of counsel's competence, "as counsel possesses a wide latitude in determining what tactics to employ when defending a client." State v. St. Germain , 2007 MT 28, ¶ 33, 336 Mont. 17, 153 P.3d 591. The defendant bears the burden to show that his counsel's performance fell below an objective standard of reasonableness. St. Germain , ¶ 33.
¶12 Wittal argues that defense counsel was ineffective because the outcome of the case turned on Toman's, Hansen's, and Crone's credibility. He maintains that his trial counsel should have agreed, not objected, to an accomplice jury instruction. Wittal contends that the State exploited the absence of the jury instruction and that Toman's, Hansen's, and Crone's testimonies were not corroborated. The State counters that this Court should not address Wittal's ineffective assistance of counsel claim on direct appeal because the record does not explain "why" defense counsel chose to object to the jury instruction. Alternatively, the State argues that Wittal's trial counsel was not ineffective because his objection was based upon a reasonable tactical decision. Contrary to Wittal's argument, the State points out that it emphasized during closing argument the evidence corroborating the testimony of the three alleged accomplices.
¶13 When considering an ineffective assistance of counsel claim raised on direct appeal, we first determine whether the claim is based on the trial record. State v. Sawyer , 2019 MT 93, ¶ 13, 395 Mont. 309, 439 P.3d 931. The record "must adequately document a challenged act or omission of defense counsel for the defendant to raise an ineffective ***160 assistance claim on direct appeal." Sawyer , ¶ 13 (internal citation omitted). We will address the claim on direct appeal if the record "explains why counsel did not do something." Sawyer , ¶ 13 (internal citation omitted). If the claim instead is based on matters outside the record, we will not review it on direct appeal, recognizing that the defendant may raise the issue in a postconviction proceeding. Sawyer , ¶ 13. We may consider a claim not based on the trial record if there is no plausible justification for counsel's action or inaction. State v. Kougl , 2004 MT 243, ¶ 15, 323 Mont. 6, 97 P.3d 1095. *1043 ¶14 Wittal's counsel objected to the jury instruction because he was concerned that it would confuse the jury about who was on trial and what questions of fact needed to be answered. Defense counsel agreed, though, that its caution to view the witnesses' testimony with distrust was appropriate. The District Court opined that "whether [the instruction is] offered or not is a tactical decision that [defense counsel] and his client would need to make." The court stated also that if Wittal's defense was that he was not "even there and had nothing to do with it," it may be a tactical decision to not offer the instruction. Wittal does not assert that counsel had "no plausible justification," claiming instead that the record is not silent and that his claim is thus appropriate for review on direct appeal. We decline to entertain Wittal's argument. Because counsel agreed with some parts of the instruction and not others, we conclude that the record is not sufficiently developed to determine whether his objection was a reasonable tactical decision. See State v. Vukasin , 2003 MT 230, ¶ 43, 317 Mont. 204, 75 P.3d 1284. If Wittal chooses to pursue his ineffective assistance of counsel claim, he must do so in a properly presented petition for postconviction relief.
CONCLUSION
¶15 The judgment of conviction is affirmed. If Wittal files a petition for postconviction relief, the District Court may consider appointing counsel under § 46-21-201(2), MCA.
We Concur:
MIKE McGRATH, C.J.
JAMES JEREMIAH SHEA, J.
DIRK M. SANDEFUR, J.
INGRID GUSTAFSON, J.