FILED

10/10/2023

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 22-0303

DA 22-0303

IN THE SUPREME COURT OF THE STATE OF MONTANA

2023 MT 191N

ROBERT MATTHEW WITTAL,

      Petitioner and Appellant,

   v.

STATE OF MONTANA,

      Respondent and Appellee.

APPEAL FROM:   District Court of the Eleventh Judicial District,
In and For the County of Flathead, Cause No. DV-20-1025(B)
Honorable Robert B. Allison, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

         Nick K. Brooke, Stephens Brooke, P.C., Missoula, Montana

      For Appellee:

         Austin Knudsen, Montana Attorney General, Tammy K Plubell, Assistant Attorney General, Helena, Montana

         Travis Ahner, Flathead County Attorney, John Donovan, Deputy County Attorney, Kalispell, Montana

Submitted on Briefs:  August 9, 2023

Decided:  October 10, 2023

Filed:

_____
Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1     Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, we decide this case by memorandum opinion. It shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2     On October 20, 2016, a Flathead County jury found Robert Matthew Wittal guilty of deliberate homicide in the stabbing death of Wade Rautio. The Eleventh Judicial District Court sentenced Wittal to 110 years in the Montana State Prison. In 2019, this Court affirmed Wittal's conviction. *State v. Wittal*, 2019 MT 210, ¶ 15, 397 Mont. 155, 447 P.3d 1039. Wittal timely petitioned for postconviction relief. The District Court denied Wittal's petition, and he now appeals. We affirm.

¶3     The facts giving rise to Wittal's arrest and conviction are detailed in *Wittal*. ¶¶ 2-9. We recount only those facts necessary to our decision. Though Wittal raised six grounds for relief in his amended petition, on appeal he argues just one—that he was denied the effective assistance of counsel when his attorney failed to call two key alibi witnesses. Wittal has abandoned his five remaining claims, and we do not consider them. *Ford v. State*, 2005 MT 151, ¶ 35, 327 Mont. 378, 114 P.3d 244.

¶4     At trial, Wittal was represented by Steven Scott from the Office of the State Public Defender. In its case in chief, the State called two men present during Rautio's murder, David Toman and Christopher Hansen. Both testified that they were with Wittal in the

2

early morning hours of May 26, 2016, when Wittal stabbed Rautio to death. Hansen testified to watching Wittal chase Rautio through a small stream, where Rautio's body eventually was found. Several other eye-witnesses testified to seeing Wittal, Rautio, Hansen, and Toman leave a residence in a Dodge Durango that same morning. Several hours later, when the Durango returned to the residence, only Toman, Hansen, and Wittal were in the vehicle. Multiple witnesses testified that when Wittal returned he was soaking wet, took his wet clothes off, and burned them in a wood stove. In addition to eyewitness testimony, the State relied heavily on cell phone data showing Wittal's phone moving between Evergreen, Montana, and the area of the murder in the early morning hours of May 26, 2016.

¶5 Wittal was the only defense witness. On direct examination, Wittal claimed that he had not been involved in the murder and that the other witnesses had stolen his cell phone and framed him for Rautio's death. On cross-examination, Wittal said he had traveled from the Flathead to Dillon on the day of the murder, suggesting a possible alibi defense. Scott did not present any corroborating witnesses or evidence to support Wittal's alibi defense.

¶6 Wittal claims Scott provided ineffective assistance of counsel by failing to investigate Wittal's alibi claims and by failing to interview corroborating witnesses. In support of his argument, Wittal provided affidavits of his sister, Heather Vollin, and his mother, Theresa Bering. Vollin attested that Wittal picked her up in Dillon, Montana, at roughly 3:00 p.m. on May 26, 2016. Vollin asserted that no investigator or attorney had ever contacted her about her version of events. Vollin stated, however, that she had

3

contacted Scott about testifying on Wittal's behalf. Scott, according to Vollin, declined to call her as a witness because he believed the jury would not find her credible. In her affidavit, Bering testified that sometime in the Spring of 2016 she overheard Hansen admit that he had been the one who killed Rautio. Wittal requested that the State be required to respond to his petition and that the District Court hold an evidentiary hearing.

¶7    While Wittal's petition was pending, the State sought a *Gillham* order allowing Scott to respond, which the District Court granted.[1] In his affidavit, Scott recalled that he had spoken with Vollin prior to trial. Scott recounted that, even assuming Vollin's version of events was correct, it would have placed Wittal in the Flathead in time to commit the murder, thereby undermining any value the testimony had as alibi evidence. Also concerning to Scott, when he approached Wittal regarding the weaknesses in Vollin's account, Wittal changed his story. Given the inconclusive nature of the evidence and Wittal's inconsistent stories, Scott made the tactical decision to not call Vollin as a witness.

¶8    After reviewing Wittal's petition, as well as the affidavits, the District Court held that Wittal had failed to show Scott provided ineffective assistance. The District Court denied Wittal's request for an evidentiary hearing and dismissed his petition.

¶9    This Court reviews the denial of a petition for postconviction relief to determine whether the district court's findings of fact are clearly erroneous and whether its

___

[1] Where a convicted person files for postconviction relief based on a claim of ineffective assistance of counsel and the testimony of counsel is required for the postconviction court to ascertain the truth, the court may order counsel to testify. Counsel is protected from any disciplinary proceeding that would result from the disclosure of confidential information when responding to such an order. *In re Petition of Gillham*, 216 Mont. 279, 281-82, 704 P.2d 1019, 1020-21 (1985).

4

conclusions of law are correct. *Whitlow v. State*, 2008 MT 140, ¶ 9, 343 Mont. 90, 183 P.3d 861. A district court's decision whether to hold an evidentiary hearing is discretionary and is reviewed for abuse of that discretion. *State v. Hanson*, 1999 MT 226, ¶ 9, 296 Mont. 82, 988 P.2d 299. A district court may decline to hold a hearing and dismiss a petition for postconviction relief based solely on review of the pleadings. Section 46-21-201(1)(a), MCA. Because it presents mixed questions of law and fact, our review of an ineffective assistance of counsel claim is de novo. *Oliphant v. State*, 2023 MT 43, ¶ 29, 411 Mont. 250, 525 P.3d 1214.

¶10 When considering claims of ineffective assistance of counsel, this Court applies the two-pronged test first articulated by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984). *Whitlow*, ¶10. To succeed on a claim, a petitioner must show (1) that counsel's performance was deficient, and (2) that counsel's deficiencies prejudiced the defense. *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064. Because the *Strickland* test requires a petitioner to satisfy both elements, failure to satisfy either prong is fatal to the claim. *Adams v. State*, 2007 MT 35, ¶ 22, 336 Mont. 63, 153 P.3d 601.

¶11 To satisfy the first *Strickland* prong, "the defendant must show that counsel's representation fell below an objective standard of reasonableness." *Whitlow*, ¶ 14 (quoting *Strickland*, 466 U.S. at 687-88, 104 S. Ct. at 2064). To show their attorney's deficient performance was prejudicial, it is not enough that counsel's failures could have had some conceivable effect on the outcome. *State v. Dineen*, 2020 MT 193, ¶ 25, 400 Mont. 461,

5

469 P.3d 122 (quoting *State v. Peart*, 2012 MT 274, ¶ 23, 367 Mont. 153, 290 P.3d 706). The claimant instead must show there exists a reasonable probability that, but for counsel's error, "the result of the proceeding would have been different." *Dineen*, ¶ 25 (quoting *State v. Lehrkamp,* 2017 MT 203, ¶ 26, 388 Mont. 295, 400 P.3d 697).

¶12 Wittal argues that Scott provided ineffective assistance by failing entirely to interview Vollin or Bering and by not presenting them as witnesses to corroborate his alibi defense. If presented, Wittal argues, Vollin's and Bering's testimonies would have corroborated Wittal's alibi defense. The State responds that Vollin's testimony does not constitute alibi evidence because, if true, Vollin's account of when Wittal picked her up in Dillon would have allowed Wittal to be in the Flathead at the time Rautio was killed. Bering's affidavit, the State argues, makes no claims regarding a trip to Dillon and is therefore irrelevant.

¶13 Scott's affidavit shows that he knew of and considered Wittal's potential alibi evidence. Despite Vollin's assertions that Scott never contacted her, her own affidavit confirms that Scott was aware of and considered her offered recollection of events. The record demonstrates that Scott's decision not to call Vollin or Bering was the type of tactical decision that falls well within the "range of acceptable professional assistance." *State v. Schowengerdt*, 2018 MT 7, ¶ 31, 390 Mont. 123, 409 P.3d 38 (citing *Whitlow*, ¶¶ 15-16).

¶14 Even if Scott acted deficiently by not interviewing or calling Wittal's two witnesses, however, Wittal must demonstrate that, considering all evidence in the record, Vollin's and

6

Bering's testimonies undermine confidence in the jury's verdict. *See Peart*, ¶ 23. Wittal has failed to satisfy this standard. If we assume that Vollin's testimony is true, and if we assume further that the jury would have found her credible, nothing in her affidavit constitutes actual alibi evidence. If Wittal, as Vollin asserts, picked her up in Deer Lodge at or around 3:00 p.m., Wittal still would have had time to return to the Flathead area and commit the murder. As noted, the State presented ample eye-witness testimony from those who saw Wittal stab Rautio and those who witnessed him destroy evidence of the crime. The State presented cell phone data showing Wittal's device moving between Evergreen, Montana, and the area of the murder during the early morning hours of May 26. The State also presented testimony from Wittal's then-girlfriend, Kristin O'Lexey, who testified to texting with Wittal during the time the murder allegedly took place.

¶15 Assuming that Wittal could meet his burden to show Scott's deficient performance, Wittal fails to show that any such failure prejudiced him. Given the overwhelming evidence presented by the State, Wittal cannot show that Vollin's testimony creates a reasonable probability that the result of his trial would have been different. *Dineen*, ¶ 25. As the District Court pointed out, an alibi witness who fails to establish an alibi could be fatal to the defense. And we agree with the State that Bering's affidavit adds nothing of value to Wittal's argument. Because Wittal has failed to show prejudice, his claim for ineffective assistance of counsel fails.

¶16 Wittal maintains that because Vollin's and Bering's claims, if true, would entitle him to relief, the District Court abused its discretion by denying his request to hold an

7

evidentiary hearing. "It is not error to deny an application for post-conviction relief without an evidentiary hearing if the allegations . . . would [] not entitle petitioner to relief." *Coleman v. State*, 194 Mont. 428, 433, 633 P.2d 624, 627 (1981). Wittal draws our attention to *Lawrence* and *Schaff,* where we found the district court had abused its discretion by not holding an evidentiary hearing because the postconviction record did not contain sufficient evidence to resolve the claims at issue. *State v. Lawrence*, 2001 MT 299, ¶ 16, 307 Mont. 487, 38 P.3d 809; *State v. Schaff*, 2001 MT 130, ¶¶ 10-11, 305 Mont. 427, 28 P.3d 1073. Here, however, the District Court had sufficient record evidence to rule on the merits of Wittal's claims. The District Court fully considered the Vollin affidavit and concluded that it provided little to no help to Wittal. As noted above, Vollin's testimony did not provide Wittal with an alibi and may well have proven detrimental to Wittal's defense. Though an evidentiary hearing may have given the court a better opportunity to evaluate the "intangibles . . . only evident during live testimony," we cannot say that the District Court abused its discretion by making its decision based on the affidavits and record before it, as the affidavits did not raise a factual dispute material to Wittal's claims. *See Brunette v. State*, 2016 MT 128, ¶ 28, 383 Mont. 458, 372 P.3d 476.

¶17 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. In the opinion of the Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review. The District Court's findings of fact were not clearly

erroneous, and it correctly applied the law. Because the District Court did not abuse its discretion by dismissing Wittal's petition without an evidentiary hearing, we affirm.

/S/ BETH BAKER

We Concur:

/S/ MIKE McGRATH
/S/ JAMES JEREMIAH SHEA
/S/ LAURIE McKINNON
/S/ DIRK M. SANDEFUR