FILED

10/31/2023

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 21-0324

DA 21-0324

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2023 MT 205N

KALEB EDWARD DANIELS,

      Petitioner and Appellant,

   v.

STATE OF MONTANA,

      Respondent and Appellee.

APPEAL FROM:    District Court of the First Judicial District,
In and For the County of Lewis and Clark, Cause No. BDV 20-1545
Honorable Michael F. McMahon, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

      Chad Wright, Appellate Defender, Helena, Montana

      For Appellee:

      Austin Knudsen, Montana Attorney General, Tammy K Plubell, Assistant
Attorney General, Helena, Montana

      Kevin Downs, Lewis and Clark County Attorney, Helena, Montana

Submitted on Briefs:  August 30, 2023

Decided:  October 31, 2023

Filed:

      _____
                      Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1     Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent.  Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2     Kaleb Edward Daniels appeals the May 7, 2021 Order entered by the First Judicial District Court, Lewis and Clark County, dismissing his postconviction relief petition. Daniels contends the District Court should have permitted additional postconviction litigation, including an evidentiary hearing, rather than denying the petition upon review of the record and postconviction pleadings.

¶3     We have provided in prior appeals the background circumstances underlying Daniels' petition for postconviction relief, and will not provide a full explanation here. *See State v. Daniels*, 2019 MT 214, 397 Mont. 204, 448 P.3d 511; *State v. Strizich*, 2021 MT 306, 406 Mont. 391, 499 P.3d 575.  When Marshall and Sonja Buus arrived at their cabin near Wolf Creek, Montana, on December 28, 2016, they encountered an unfamiliar black Durango vehicle backed up to the cabin and two individuals inside, Daniels and Jory Strizich.   The pair fled, and as Marshall confronted them, Daniels pulled out a chrome-plated pistol out of his pocket.  According to trial testimony, Daniels pointed the pistol at Marshall and told him to get back.  Marshall backed up and told Daniels to put the gun down, while Sonja retrieved Marshall's handgun, a .45 semi-automatic pistol, from their vehicle and gave it to Marshall.  Marshall heard a click from Daniels' gun, from which

Marshall assumed a bullet had not been chambered. When Strizich began approaching the Buuses' vehicle, Marshall yelled for him to stay away and fired a warning shot. When Strizich kept moving toward Marshall, Marshall fired another shot intending to scare Strizich, but the bullet hit him. Strizich crawled away injured. Marshall and Sonja both testified that Daniels shot several bullets at the Buuses while fleeing the cabin area. Sonja called the police and the Buuses waited at the cabin for their arrival.

¶4 Daniels ran through the snowy countryside, then flagged down a vehicle and asked Michael Ettinger for a ride into Wolf Creek, saying he had run out of gas. After he was dropped off in town, Daniels fled again. He eventually passed near the house of Jerry Burgin, who had heard about the shooting at Wolf Creek on the news and was aware the suspect was wearing a red jacket. When Burgin saw Daniels' red jacket, he called 911. Officers arrived, chased down Daniels, and detained him at 5:25 p.m., about three hours after the initial 911 call from Sonja Buus, and about 10 miles away from the cabin site. Daniels' clothing was wet when apprehended, he was at risk for hypothermia, and he did not have a firearm.

¶5 The next day, Sargeant Brett Friede and Detective William Pandis used a metal detector to search for evidence on the Buuses' property. They testified that they recovered five empty .25-caliber shell casings near the southwest corner of the Buus cabin where Marshalls testified Daniels was located when he fired a pistol at them, as well as two .25-caliber unexpended bullets near the casings. The State's firearm expert witness, Lynette Lancon, testified the five .25-caliber shell casings recovered by deputies had been fired from the same gun. Authorities also recovered three .45-caliber shell casings that

3

came from the shots fired by Marshall. Police searched over two separate trails made in the snow heading away from the Buuses' cabin, but were unable to locate a firearm, and testified it would have been difficult to find a discarded firearm in these areas.

¶6     The Buuses had a game camera on their property that captured several photographs of Daniels near the cabin, wearing his red jacket and a ball cap. Officers discovered a cigarette butt outside of the cabin with Daniels' DNA, as well as Daniels' fingerprints on a tote inside the cabin. In a search of the black Durango pursuant to a warrant, police found two guns, bolt cutters, and other items.

¶7     At trial, Daniels' counsel cross-examined Pandis about gunshot residue (GSR) testing and argued in closing that the State's failure to conduct GSR testing undermined its investigation. The jury found Daniels guilty of attempted deliberate homicide, aggravated burglary, and tampering with evidence. On direct appeal, Daniels argued there was an error on the verdict form that denied him a fair trial, there was insufficient evidence to support the tampering charge, and his trial counsel was ineffective by failing to object to the jury form and failing to move to dismiss the tampering charge based upon insufficient evidence. This Court rejected those arguments and affirmed Daniels' convictions. *See Daniels*, ¶ 62.

¶8     Daniels filed a *pro se* petition for postconviction relief in September 2020, primarily claiming that he received ineffective assistance of counsel at trial. The District Court concluded Daniels' filing was not sufficient and granted leave for Daniels to amend his petition and refile, which he did in January 2021. Thereafter, the District Court appointed counsel for Daniels. In his amended petition, Daniels raised claims of ineffective

4

assistance of counsel regarding his trial attorney for (1) failing to move to dismiss for lack of probable cause; (2) failing to object to the jury selection process; (3) failing to properly prepare for trial, including hiring an expert witness to rebut a lack of GSR testing; (4) failing to present a defense or make a closing argument.  He also claimed that his trial attorney's performance was so egregiously poor that he was constructively denied counsel, and that he was denied due process when the State shifted the burden of proof to him by failing to conduct GSR testing.

¶9    The District Court issued a *Gillham*[1] order requiring Daniels' trial counsel, Steven Scott, and appellate counsel, Caitlin Boland Aarab, to submit affidavits concerning their representation of Daniels, on which the State relied in its response to the petition.  With respect to Daniels' claim that Scott was ineffective for failing to hire expert witnesses, Scott answered:

> I recall a conversation about him wanting an expert witness, but he would not say in what. He just kept telling me he wanted an expert witness and I kept asking him on what subject? What would the expert testify to? He had no answer. It is only now in the petition he filed that he says a ballistics expert.

¶10    Regarding Daniels' claim against the State for denying him due process when it did not conduct GSR testing on his clothes or person, Scott responded:

> Mr. Daniels again goes back to the GSR and complains that since the state did not test him for GSR that burden shifted the case over to him to prove his innocence. GSR testing is not an end all test as Mr. Daniels seems to believe. I did point out the state failed to test for GSR in an attempt to raise doubt. There is no burden shifting as Mr. Daniels believes and his rights were not

---

[1] *See In re Petition of Gillham*, 216 Mont. 279, 704 P.2d 1019 (1985) (providing procedure for requiring defense counsel to respond to a claim of ineffective assistance).

violated when the state did not perform this test. I have no idea how I would have tested Mr. Daniels as to whether he did or did not fire a weapon. If you have any knowledge of GSR, then you know it is rather frail evidence and simply washing your hands or taking off your shirt can wipe away the residue. I also have no idea how I would have investigated that Mr. Daniels did not have a weapon on him at the time of the offense. I was not there and had not spoken with him prior to this incident about his plans.

¶11 In May 2021, without conducting further proceedings, the District Court dismissed Daniels' petition in a written order. The District Court reasoned that Daniels had submitted only a single affidavit presenting "his own conjecture," and had added no evidence that could overcome the presumption in favor of his counsel's representation on his IAC claims. Daniels appeals.

¶12 "Claims of ineffective assistance of counsel are mixed questions of law and fact, which we review de novo." *State v. Oliver*, 2022 MT 104, ¶ 21, 408 Mont. 519, 510 P.3d 1218. "We review discretionary rulings in postconviction relief proceedings, including rulings related to whether to hold an evidentiary hearing, for an abuse of discretion." *Wilkes v. State*, 2015 MT 243, ¶ 9, 380 Mont. 388, 355 P.3d 755. This Court reviews IAC claims under the two-prong test articulated by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984). *State v. Mikesell*, 2021 MT 288, ¶ 19, 406 Mont. 205, 498 P.3d 192. Under that test, as restated by this Court, the defendant must show: "(1) counsel's performance was deficient; and (2) the deficient performance prejudiced the defendant." *Avery v. Batista*, 2014 MT 266, ¶ 26, 376 Mont. 404, 336 P.3d 924. The burden falls on the defendant to overcome the presumption that counsel's representation fell within a range of acceptable professional assistance. *State v. Wittal*, 2019 MT 210, ¶ 11, 397 Mont. 155, 447 P.3d 1039. To overcome this presumption,

6

the defendant must "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Garding v. State*, 2020 MT 163, ¶ 16, 400 Mont. 296, 466 P.3d 501. Under the first prong of the *Strickland* inquiry, the Court determines the reasonableness of counsel's challenged conduct. *Avery*, ¶ 27. In doing so, the Court examines "whether, in light of all the circumstances, the identified acts or omissions were outside the range of professionally competent assistance." *Avery*, ¶ 27. Concerning *Strickland*'s second prong, the defendant must "demonstrate the existence of a reasonable probability that, but for counsel's unprofessional conduct, the result of the case would have been different." *State v. Jefferson*, 2003 MT 90, ¶ 53, 315 Mont. 146, 69 P.3d 641.

¶13 As an initial matter, Daniels made multiple claims in his postconviction relief petition, stated above, but on appeal he provides substantive briefing only on the issue that the District Court erred by failing to provide further litigation, such as an evidentiary hearing, in light of his claim that his trial attorney rendered IAC by failing to enlist expert or forensic assistance to conduct GSR testing on his clothes following the altercation with the Buuses.

¶14 A district court may dismiss a petition for postconviction relief without holding an evidentiary hearing if, following the responsive pleadings to the petition, the Court determines that the petitioner failed to state a claim for relief. *See* § 46-21-201, MCA. This determination is made in view of the record evidence available to the district court. *See Herman v. State*, 2006 MT 7, ¶ 45, 330 Mont. 267, 127 P.3d 422. Here, the district

court dismissed all of Daniels' IAC claims on the ground that the record and postconviction pleadings conclusively showed that they lacked merit.

¶15 Daniels argues the District Court prejudiced him by "first ordering the petition to be amended before ordering the State to respond and then appointing counsel who would be hamstrung by the amendment limits and the lack of any State response to tailor [a] postconviction strategy around," and then not conducting an evidentiary hearing to allow his claims to be further developed. While the assistance of counsel in the preparation of the amended petition may have been preferable, we nonetheless conclude Daniels cannot establish that further GSR testing would have created a reasonable probability that the outcome of the case would be different under *Strickland*'s second prong. *Jefferson*, ¶ 53.

¶16 We have recognized that a court is not required to approach the *Strickland* inquiry in any particular order, or to even address both components of the inquiry when a defendant makes an insufficient showing on one of them. *State v. Cobell*, 2004 MT 46, ¶ 15, 320 Mont. 122, 86 P.3d 20. Thus, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, that course should be followed." *Cobell*, ¶ 15 (citing *State v. Morgan*, 2003 MT 193, ¶ 10, 316 Mont. 509, 74 P.3d 1047).

¶17 The general premise of Daniels' GSR-related claim is that a test that revealed no residue would tend to indicate that he did not, in fact, fire a weapon at the Buuses. However, even assuming Daniels could have provided such GSR testing evidence, this result would not have affirmatively established he did not discharge a firearm. Pandis' testimony, echoed by Scott's postconviction affidavit, was that there was little probative value to GSR testing in this context, even setting aside that Daniels had been apprehended

after he had slogged through snow for hours, wet and hypothermic. More importantly, both Marshall and Sonja Buus testified that Daniels had shot at them, and shell casings were discovered in the area where they testified Daniels had fired. This evidence would not have been rebutted by GSR testing. Daniels also failed to offer any information about what a gunshot residue expert might say or what expert conclusions might be drawn from GSR analysis, and Daniels' claim that a lack of residue would rebut the deliberate homicide charge is unsupported by the record.

¶18 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. In the opinion of the Court, the District Court did not err in denying Daniels' IAC claim, and it did not abuse its discretion when it refused to hold a hearing on the matter.

¶19 Affirmed.


/S/ JIM RICE


We concur:

/S/ MIKE McGRATH
/S/ JAMES JEREMIAH SHEA
/S/ LAURIE McKINNON
/S/ INGRID GUSTAFSON